GIULIO DISTEFANO, ET AL, Plaintiffs, *v.* WEST T. LAMBORN, ET AL, Defendants and Third Party Plaintiffs, v. HUBER BAKING COMPANY, Third Party Defendant.

(*June* 7, 1951.)

LAYTON, J., sitting.

*William Poole, Thomas J. Healy* and *John Van Brunt* for Defendants, Third Party Plaintiffs.

*William Prickett* for Third Party Defendant.

Superior Court for New Castle County, No. 271, Civil Action, 1950.

LAYTON, J.:

Third Party Plaintiffs concede the general principle that no right of contribution exists between joint tort-feasors, but argue that the Rule is subject to numerous exceptions, among which is that where the negligences charged are passive, in contra-distinction to deliberate or willful, an action of contribution may be maintained by a joint tort-feasor who has paid all or more than his pro rata share of the judgment. This exception to the general rule, they contend, is applicable here.

Any discussion of the subject necessarily leads back to the case of *Merryweather v. Nixon*, 101 *Eng. Rep.* 1337, which seems to be the leading case on this question. There, two defendants committed a joint trespass upon a mill property and a judgment was returned against both. Plaintiff elected to collect the entire judgment from Merryweather who then brought action for contribution against Nixon, his co-defendant. He was non-suited and on his motion to set aside the judgment of non-suit it was held by Lord Kenyon, C. J., that

"There could be no doubt but that the non-suit was proper: that he had never before heard of such an action having been brought, where the former recovery was for a tort: that the distinction was clear between this case and that of a joint judgment against several defendants in an action of assumpsit; and that this decision would not affect cases of indemnity * * *".

This decision is important for two reasons (1) It is the first published case laying down the Rule and (2) It was obviously restating what had been the English Law for a long period of time, for Lord Kenyon said "he had never before heard of such an action having been brought where the former recovery was for a tort."

The last phrase in the opinion, which is unfortunately somewhat obscure, is discussed in 45 *Harv. Law Review* 350 (n.6), where it is explained that Lord Kenyon had in mind the class of cases in which A innocently commits a tort at the request or for the benefit of B. A would clearly be entitled to indemnity. This had already been decided in *Fletcher v. Harcot, Hutton* 55, 123 *Eng. Rep.* 1097 (1622). In that case the plaintiff, an innkeeper, at the request of the defendant sheriff, had kept overnight a prisoner. The prisoner sued the plaintiff and recovered damages for false imprisonment and the plaintiff. was awarded indemnity from the sheriff. *Adamson v. Jarvis*, 130 *Eng. Rep.* 693, apparently questions the rule of *Merryweather v. Nixon*. There an auctioneer was deceived into selling goods represented by X as being his. Later the actual owner appeared and recovered judgment against the auctioneer who, thereafter, recovered by way of contribution against X. The Court said:

"* * * and from the concluding part of Lord Kenyon's judgment in *Merryweather v. Nixon*, and from reason, justice and sound policy, the rule that wrongdoers cannot have redress or contribution against each other is confined to cases where the person ·seeking redress must be presumed to have known that he was doing an unlawful act."

But *Adamson v. Jarvis* and *Fletcher v. Harcot* are so similar on their facts as to render it quite probable that the former case would come within the exception mentioned by Lord Kenyon. Another apparent exception to *Merryweather v. Nixon* seems to have grown up in this country in cases involving the doctrine of respondeat superior and other similar situations where one joint tort-feasor is entitled, not to contribution, but to indemnity from another joint tort-feasor under circumstances where the negligent acts of the two were not in *pari delicto* as to each other. Insofar as concerns the law of torts, an indemnity case may be said to be where an improper act of one person causes an injury, and the law allows the injured party to recover for his injury from someone other than the actor. For

example, see *Baltimore & O. R. R. Co. v. County Commissioners of Howard County,* 113 *Md.* 404, 77 *A.* 930 and *Gray v. Boston Gas Light Co.,* 114 *Mass.* 149. However, these latter cases would also seem to fall into that class of indemnity cases referred to by Lord Kenyon in *Merryweather v. Nixon.* Aside from the exception to the rule in indemnity cases just discussed, I think it is fair to say that long prior to *Merryweather v. Nixon* and as late as 1934, the English Courts have steadfastly denied contribution among joint tort-feasors who, acting either independently or jointly, negligently injure a third person. *Esten v. Rosen,* 63 *Ont. Law Rep.* 210 (1929); *Hillen v. I. C. I. Ltd.* (1934), 1 K. B. 455.

However, no such unanimity exists among our decisions on this question for in this country the rule is riddled with exceptions. See 13 *Am. Jur.,* Contribution, Sec. 36 *et seq.* and *Vol.* 18 *C. J. S.,* Contribution, § 11(b). In addition to the exception to the rule created by indemnity cases, another line of authorities, and as previously stated, the one urged upon me here, holds that when the negligences charged are passive, rather than deliberate or willful, an action for contribution may be maintained by one joint tort-feasor against the other. This calls for some examination of the pleadings in the case. As I read them the Lamborns are alleged to have negligently prepared defective plans and furnished improper steel work for the erection of the steel framework for Huber's building, and McCormick with installing steel beams in such negligent fashion as to cause them to give way. Active, though not deliberate, negligence is charged. Concert of action is not alleged and I am assuming also that the Lamborns are not charged with liability simply because they innocently relied upon McCormick's defective plans.[2]. This is a case, then, where two joint tort-feasors acting independently

---

[2]The normal contribution case in tort is not begun until after a judgment has been obtained against two joint tort-feasors, one paying all the judgment and thereafter suing the other. Thus, the degrees of negligence have already been established and proved. Here I am forced to rely completely on the rather vague allegations of the pleadings.

are charged with active, though not willful, negligence resulting in injuries to third parties. Concededly, respectable authority exists for allowing contribution between joint tort-feasors in such a case. *Armstrong County v. Clarion County*, 66 *Pa. St.* 218; *Underwriters at Lloyds of Minneapolis v. Smith*, 166 *Minn.* 388, 208 *N. W.* 13; *Ellis v. Chicago & N. W. Ry. Co.*, 167 *Wis.* 392, 167 *N. W.* 1048. *Hobbs v. Hurley*, 117 *Me.* 449, 104 *A.* 815, is also cited as standing for this proposition but it involves the doctrine of respondeat superior and I feel that it should be classed as an indemnity case.[3]

Despite the natural inclination to seize upon almost any acceptable excuse for departing from the harsh English rule, I am, nevertheless, of the opinion that under facts such as these, the majority rule in this country was the same as in England. I say "was" because now a large number of the states, including Delaware, have adopted statutes governing the right of contribution and we are forced back to our older case law for the answer. An examination of a number of these decisions convinces me that the exception here urged was not recognized by any substantial number of the authorities. *Norfolk Southern R. Co. v. Beskin*, 140 *Va.* 744, 125 *S. E.* 678; *Union Stockyards Co. v. Chicago, Burlington & Quincy Ry. Co.*, 196 *U. S.* 217, 25 *S. Ct.* 226, 49 *L. Ed.* 453; *Public Service Ry. Co. v. Matteucci*, 105 *N. J. L.* 114, 143 *A.* 221; *Baltimore & O. Ry. Co. v. County Commissioners*, 113 *Md.* 404, 77 *A.* 930; *Gray v. Boston Gas Light Co.*, 114 *Mass.* 149; Shearman and Redfield, *Negligence*, Vol. 4, Sec. 894, p. 2006; *Restatement, Restitution*, Sec. 102, p. 429. And even those who have criticized the English Rule severely seem to concede that it is firmly imbedded in our decisional law. See *Contribution and Indemnity between Tortfeasors* (Leflar), 81 *Penna. Law Review* 130 at 146.

---

[3] It should be noted also that *Ellis v. Chicago & N. W. Ry. Co.* cites *Palmer v. Wicks & P. S. Co. Ltd.* (1894), *App. Cases* 318, wherein it is conceded that the no contribution rule is the settled law of England but refuses to apply it in Scotland; and the Court in *Underwriters, etc. v. Smith* admits that the no contribution rule represents the majority view in this country but refuses to follow it.

Insofar as our own State law is concerned, no published opinion has been cited. However, Judge Carey in an unreported letter opinion dated November 18, 1949, stated:

"The present motion in this case to join Rutowski as third party defendant is apparently based on Rule 14. Under the law as it existed prior to May 7th this year there would seem to be no doubt that the motion would have to be denied."

Obviously faced with practically the same situation presented by the present motion, Judge Carey was clearly saying that before May 7, 1949, the date of the passage of the Uniform Act, such a motion must fail because no right of contribution between joint tort-feasors then existed in Delaware.

It is also pertinent to mention, though I do not rest my decision on this ground alone, that, if the rule of *Merryweather v. Nixon* antedated the Revolutionary War period, and I am convinced that it did, then it must have been incorporated into the common law of this State by virtue of Art. 25 of the Constitution of the State of Delaware of 1776, which states in part— "The common law of England, as well as so much of the statute law as has been heretofore adopted in practice in this State, shall remain in force, unless they shall be altered by a future law of the legislature".

The no contribution rule has little to commend it. It has been the subect of severe criticism (Leflar Article, 81 *Penna. Law Review* 130, *supra*). However, I am of the opinion that, with the possible exception of the indemnity cases, it was the rule in Delaware until May 7, 1949. When a settled rule of this sort is to be changed it is a matter for the Legislature, not a *nisi prius* court.

It is next argued that even though no exception to the no contribution rule exists in Delaware, nevertheless, The Uniform Contribution Among Tort-Feasors Act should be construed retroactively. This Act appears in Vol. 47, *Laws of Delaware*,

Chapter 151, at page 259. The language of the Act does not purport to make it retroactive and, thus we have a question, not of constitutional law, but of statutory construction. It is an elementary principle of statutory construction that a court will not infer an intention to make an Act retroactive. *Keller v. Wilson,* 21 *Del. Ch.* 391, 190 *A.* 115. Exceptions are recognized in cases concerning matters purely procedural in nature. *Bowing v. Delaware Rayon Co.,* 8 *W. W. Harr.* 111, 188 *A.* 769, but no case has been cited containing such a result when the rights affected are substantive. It is contended that the right of contribution granted under the Uniform Act is merely procedural, but the draftsman of the Act has stated just the contrary:

"The first subsection of the second section creates a right of contribution as a matter of substantive law amongst those who are jointly liable for injuries to the person or property of another." 16 *Am. Law Institute Proceeding,* 348 (1939).

Furthermore, the Supreme Court of Arkansas has held that the Uniform statute is not to be construed retroactively. *Commercial Casualty Ins. Co. v. Leonard,* 210 *Ark.* 575, 196 *S. W.* 2d 919. And while the facts in that case are not identical and no reason is assigned for the conclusion reached, it is the decision of the highest court of a state construing the Uniform Act which should in conscience be regarded as binding unless clearly wrong. Finally in a supplementary letter of opinion, in *Rutkowski v. Banks, supra,* Judge Carey stated:

"We are here dealing only with the construction of a statute wherein the Legislature has not expressed its desire one way or the other. Applying the foregoing basic rules it must be said as a matter of judicial construction, that the Act (Uniform Contribution Act) is not retroactive, for it cannot be held that the statute is merely one which relates to procedure."

See also *Norfolk & S. R. Co. v. Beskin,* 140 *Va.* 744, 125 *S. E.* 678.[4] I am of the opinion that the Act affects substantive

---

[4]Decided under a statute somewhat similar to the Uniform Act.

rights and cannot be construed retroactively.

Finally, the interesting argument is presented that even if the Act is not retroactive, nevertheless, the right of contribution does not become fixed until one joint feasor "has by payment discharged the common liability or has paid more than his pro rata share thereof."[5] No judgment having been obtained, no payment discharging the common liability having been made, and the Uniform statute having intervened before any right has become fixed, then it is argued, the Act is applicable to this case.

When does the right of contribution between joint tort-feasors become fixed—at the time of the accident or when one of them by payment discharges all or more than his pro rata share of the joint liability? In approaching this question we must distinguish between the right to contribution and the right to institute suit to compel contribution. Certainly, independent of the Uniform Act there could be little doubt about the answer. 18 *C. J. S., Contribution,* § 4, states:

"The right to contribution is inchoate from the date of the creation of the relation between the parties, but is not complete, so as to be enforceable, until there has been an actual payment, in whole or in part, of the common obligation * * *".

And in *DeBrue v. Frank,* 213 *Wis.* 280, 251 *N. W.* 494, 496, the Court said:

"When the concurring negligent acts give to the injured a cause of action against the joint tort-feasors, the incidental right of a joint tort-feasor to compel contribution is created. Once in being, although contingent, subordinate, or inchoate, it has an existence in contemplation of law until it is no longer needed as a resource to which the joint tort-feasor may look for relief from an inequitable burden placed upon him by reason of the refusal of another to perform such other's duty by paying his honest

---

[5]Sec. 2 of the Uniform Act.

share of the common obligation, * * *."

To the same effect see *Glazer v. Wheeler, Tex. Civ. App.*, 130 *S. W.* 2d 353 (reversed on other grounds).

Is there anything in the Uniform Act which would change this result? It is urged that subsection (2) of Section 2[6] makes it clear that a different result is indicated under the Uniform statute but I do not agree. Clearly that section is merely referring to the time when the right to institute suit for contribution arises and not to the inchoate right of contribution itself. The Commissioner's notes in 9 *Uniform Laws Ann.* 162 lend support to this conclusion:

"Subsection (2): This subsection merely states the universally recognized condition required for obtaining a money judgment for contribution. The Act in no way changes this requirement for stating a 'cause of action' for contribution; and the subsequent sections permitting cross litigation in the injured person's action, before these conditions exist, of some of the issues involved in securing contribution are in no way in conflict with the provisions of this subsection."

A number of cases have been cited which are said to stand for the proposition that no right accrues under the Uniform Act until one joint tort-feasor actually pays all or more than his pro rata share of a joint judgment. This is so, but the right referred to is merely the procedural right to institute the action for contribution and not to substantive right to contribution which arises with the accident.

In *Consolidated Coach Corp. v. Burge*, 245 *Ky.* 631, 54 *S. W.* 2d 16, 18, 85 *A. L. R.* 1086, a statute (not the Uniform Act) granted the right of contribution among joint tort-feasors. Plaintiff and Defendant were joint tort-feasors. Plaintiff had been

---

[6]"A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof."

sued, settled with the injured persons before judgment and then sued the joint tort-feasor for contribution. The following language of the Court is emphasized:

"* * * The act of payment of compensation in the satisfaction of judgment or compromise to the injured passengers by the Consolidated Coach Corporation * * * fixed and determined its right of action against Burge."

However, earlier in the decision, the Court said this:

"As long then as the injured passengers' rights to compensation remained undetermined, the subordinate right of the bus company to contribution continued, and, on payment of the compensation to the injured passengers by the owner of the bus, whether in satisfaction of judgments against it in favor of the injured passengers, or pursuant to a payment on compromises, its cause of action to enforce its right of contribution against the owner of the truck immediately accrued and existed until barred by the statute of limitations."

In my judgment this case does not support the proposition for which it is cited. Rather, it seems to point up more clearly the distinction between the substantive right to contribution existing at the time of the accident and the subsequent right to bring an action for contribution when one joint tort-feasor pays more than his pro rata share of the judgment.

*Fox v. Western N. Y. Motor Lines,* 257 *N. Y.* 305, 178 *N. E.* 289, 78 *A. L. R.* 578, is also cited but the wide divergence between the New York Statute and the Uniform Act convinces me that the New York cases cannot be regarded as authoritative on this point. The New York Statute, unlike the Uniform Act, does not allow contribution among joint tort-feasors as a matter of substantive right. Instead, it conditions the right to bring suit for contribution upon the obtaining of a judgment against joint tort-feasors. Even though New York has established a third party practice statute, the New York Courts have held that it is

not available to a defendant who seeks to bring in a third party defendant because no right of any sort comes into being until Plaintiff first secures a judgment against two or more tortfeasors. On the contrary, the Uniform Act begins by stating, "The right of contribution exists among joint tortfeasors", and goes on to grant a Defendant the right to bring in a third party Defendant under the rule of Court dealing with third party practice.[7]

Although the New York Courts seem to regard their statute as conferring a substantive right, *Brown v. Cranston,* (2 *Cir.*) 132 *F.* 2d 631, 148 *A. L. R.* 1178, yet no other State has followed this view. To the contrary the Courts of California and Minnesota, where statutes almost identical with that of New York exist, have come to exactly opposite conclusions, both holding that the right is procedural, not substantive. *Forsythe v. Los Angeles Ry. Co.,* 149 *Cal.* 569, 87 *P.* 24; *Kemerer v. State Farm Mutual Auto Ins. Co.,* 201 *Minn.* 239, 276 *N. W.* 228, 114 *A. L. R.* 173. Other cases cited to the effect that the statute of limitations starts to run, not from the date of the accident, but from the time the right to institute the action for contribution, are not persuasive.

Actually, the answer to this question, just as in the preceding argument, depends upon whether the Uniform Act grants a right of contribution as a matter of substantive law. I might well have disposed of both arguments in one discussion but preferred to treat them separately. In their argument on this question, as in the preceding one, third party plaintiffs are forced to take the position that the right of contribution granted by the Uniform Act is procedural. If so then, of course, no right accrues until one of two joint tort-feasors pays more than his pro rata share of the judgment in which case the Act might well be construed as applicable to an accident which

---

[7] In this latter respect the Delaware Act differs slightly from the Uniform Act.

happened prior to its passage, or, in other words, as retroactive in character. But I am convinced that the right granted is substantive. This being so, the right to contribution, as distinguished from the right to institute an action for contribution, attaches at the time of the accident and the Uniform Act passed subsequently thereto does not control.

An order sustaining Third Party Defendant's motion for summary judgment will be entered.

(*July* 26, 1951.)

## ON REARGUMENT

LAYTON, J.:

Two days prior to the filing of the opinion reported above, the Legislature passed an Act (48 *Del. Laws* 301) amending the Uniform Contribution Act by adding to Sec. II the following language:

"Sec. I. That Chap. 151, Volume 47, *Laws of Delaware*, be and the same is hereby amended by adding to Sec. 2 of said Act a new sub-paragraph (5) as follows:

(5) The right of contribution provided by this Act shall be enforceable only with respect to judgments entered against one or more joint tort-feasors subsequent to May 27, 1949." Unfortunately, the pendency of this amendment before the Legislature was not called to my attention by counsel at the argu-

ment, nor was the fact of its passage communicated to me at the time I filed the above opinion. It becomes necessary, therefore, to review the conclusions arrived at above in the light of the language of the amendment just quoted.

Prior to the quoted amendment Sec. 2 of the Delaware Uniform Contribution Act, 47 *Del. Laws, Chap.* 151, read as follows:

"Section 2. Right of Contribution; Accrual; Pro Rata Share:

"(1) The right of contribution exists among joint tortfeasors.

"(2) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

"(3) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

"(4) When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares."

As a result of the amendment a fifth subsection has been added. Counsel argues that this last subsection has the effect of changing the right of contribution granted by subsection 1 from a substantive to a mere procedural right. I am unable to agree for the language of the amendment does not purport to repeal or otherwise modify the substantive right of contribution so clearly granted by subsection 1 of Section 2 (See main opinion 81 *A.* 2d 675).

It is further contended that subsection 5 of Sec. 2 (the amendment) renders the Act retroactive in effect, thereby

including within its purview accidents happening prior, as well as subsequent to, May 27, 1949. Whether or not a statute is to be given a retroactive effect is a matter of legislative intent and Courts are extremely reluctant to arrive at such a construction unless the language of the statute permits of no doubt as to the meaning of the Legislature. In this connection *Am. Jur.* Vol 50, Sec. 478 states the law to be this: "Sec. 478. General Rules as to Interpretation.—The question whether a statute operates retrospectively, or prospectively only, is one of legislative intent. In determining such intent, the courts have evolved a strict rule of construction against a retrospective operation, and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it to operate prospectively only, and not retroactively. Indeed, the general rule is that they are to be so construed, where they are susceptible of such interpretation and the intention of the legislature can be satisfied thereby, where such interpretation does not produce results which the legislature may be presumed not to have intended, and where the intention of the legislature to make the statute retroactive is not stated in express terms, or clearly, explicitly, positively, unequivocally, unmistakably and unambiguously shown by necessary implication or terms which permit no other meaning to be annexed to them, preclude all questions in regard thereto, and leave no reasonable doubt thereof. Ordinarily, an intention to give a statute a retroactive operation will not be inferred. If it is doubtful whether the statute or amendment was intended to operate retrospectively, the doubt should be resolved against such operation." Forgetting for a moment constitutional questions which might arise if this amendment were construed retroactively, let us examine its language in the light of the principle of law just quoted, in order to ascertain whether or not the Legislature has clearly intended that it should operate retrospectively.

In the first place, instead of stating that the right of contribution granted by the Act shall be enforceable as to "all" judgments entered subsequent to May 27, 1949, the amendment

provides that the right shall be enforceable "* * * only with respect to judgments entered * * * subsequent to May 27, 1949." Had the Legislature used the words "all judgments" it could be argued with much greater force that accidents happening prior, as well as subsequent to, May 27, 1949, were intended to be included within the operation of the Act. But "only" does not mean "all" and the question is thus left open as to the exact meaning of the language insofar as concerns those accidents which occurred prior to the effective date of the Act.

Of far greater importance is the effect of subsection 5 (the amendment) upon subsection 3 of Section 2. Under the latter subsection one joint tort-feasor might settle the entire claim with a Plaintiff before judgment and maintain an action for contribution against his joint tort-feasor. This result would no longer seem possible under the amendment. Thus, it can be argued with great persuasiveness that it is just as probable that subsection 5 was intended to extinguish the right of contribution based upon a settlement of the whole claim granted by subsection 3 as to render the Act retroactive in effect. It is not my function here to find the true meaning of what the Legislature intended by the amendment but to decide only whether its effect, beyond any reasonable doubt, was to render the Act retrospective. This I am unable to gather from the foregoing analysis of the language of the amendment. The result arrived at in the main opinion is affirmed.