GIULIO DISTEFANO, et al., Plaintiffs, v. WEST T. LAMBORN, et al., Defendants.

FRANK C. SPARKS COMPANY, Plaintiff, v. HUBER BAKING COMPANY, et al., Defendants.

*(November* 13, 1951.)

LAYTON, J., sitting.

*Stewart Lynch* for Frank C. Sparks Company.

*William Poole* and *Howard L. Williams* for McCormick Construction Company.

*Thomas J. Healy, Jr.,* for West T. and Robert W. Lamborn.

*William Prickett* for Liberty Mutual Insurance Company, suing in the name of Giulio Distefano, et al., Plaintiffs in No. 271 and for Huber Baking Company, Defendant in No. 347.

Superior Court for New Castle County, Nos. 271 and 347, Civil Actions, 1950.

LAYTON, J.:

Frank C. Sparks Company and Liberty Mutual Insurance Company each instituted an action under 6108, Sec. 38 of the Delaware Workmen's Compensation Law against third party tort-feasors allegedly responsible for injuries to certain employees of Sparks. I shall refer to these suits as the Sparks case and the Liberty case. Both defendants in the Liberty suit have filed motion for summary judgment and the Employees, the nominal plaintiffs[1], a motion to strike the appearance of Liberty's counsel. One of the defendants in the Sparks suit, Huber Baking Company, has filed a motion for summary judgment. Because

---

[1]Suits instituted under Sec. 38 are frequently brought in the names of the injured employee.

the effect of these motions is to raise an identical question of law, I ordered the arguments consolidated. Other opinions disposing of preliminary matters involved in this litigation will be found in *Huber Baking Co. v. Frank C. Sparks Co.,* 6 *Terry* 525, 76 *A.* 2d 124; *South Orange Trust Co. v. Barrett,* 6 *Terry* 533, 76 *A.* 2d 310; *Huber Baking Co. v. Frank C. Sparks,* 7 *Terry* 153, 81 *A.* 2d 132;*Distefano v. Lamborn,* 7 *Terry* 195, 81 *A.* 2d 675 and *Addy v. Short, Del. Super.,* 83 *A.* 2d 300.

The basic facts are these: Huber Baking Company, which I shall call Huber, contracted for a substantial addition to its plant. Frank C. Sparks Company, hereinafter called Sparks, McCormick Construction Company, hereinafter called McCormick, and West T. Lamborn and Robert W. Lamborn, hereinafter referred to as the Lamborns, were engaged in the erection of the addition under contracts with Huber. During the course of building a steel beam fell and injured Distefano and others who were employees of Sparks. I shall designate the injured parties the employees. Liberty Mutual Insurance Company, which I shall call Liberty, was the insurance carrier, for both Sparks and Huber. The employees, having elected to take compensation under the Act, were paid by Liberty, which, thereafter, instituted an action in their names against McCormick and the Lamborns under Sec. 38 of the Delaware Workmen's Compensation Act upon the theory that they were liable for the accident. Subsequent to the filing of the Liberty action, Sparks filed another action on behalf of the same employees upon the theory that it, not Liberty, was the employer entitled to maintain the suit under the Workmen's Compensation Act. In this suit Sparks named as defendants the Lamborns, McCormick and also Huber. Huber has filed a motion for summary judgment in the Sparks action upon the theory that the latter is not the employer entitled to maintain such an action under Sec. 38 of the Act. McCormick and the Lamborns have filed a motion for summary judgment upon similar grounds in the Liberty action and the employees a motion to strike the appearance of Liberty's counsel upon the theory that he is representing conflicting interests

in the Liberty action, that is, their claims on the one hand and the adverse interests of Huber on the other. The question is, thus, squarely presented whether an employer or his insurance carrier, which has paid compensation to an injured employee, is entitled to maintain the type of action provided for by Sec. 38 of the Act. Sec. 38 of the Workmen's Compensation Act is as follows: "6108. Sec. 38. Injury, Liability Of Third Person For; Employer May Elect; Subrogation Of Employer:—Whenever an injury for which compensation is payable under this chapter shall have been sustained under circumstances creating in some other person than the employer, a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this chapter or obtain damages from, or proceed at law against such other person to recover damages, but he shall not proceed against both; and if compensation is awarded under this chapter, the employer having paid the compensation or having become liable therefor, shall be subrogated to the rights of the injured employee, or of his dependents to recover damages against such third person, and may recover in his own name or that of the injured employee from the other person in whom legal liability for damages exists, the indemnity paid or payable to the injured employee. Any recovery against such third person in excess of the compensation theretofore paid and thereafter payable by the employer (less the cost of securing and collecting same) shall be paid forthwith when collected, to the employee or the dependents." Also pertinent is Sec. 42 which reads: "6112. Sec. 42. Employers, Who Are:—The following shall constitute employers subject to the provisions of this chapter: The State of Delaware, the County of New Castle, every corporation (private, public, municipal or public quasi), every association, every firm and every person (excepting the employers mentioned in Section 48 and Section 49 hereof) having in his, her, or its service any employee defined in Section 43 of this chapter. If the employer is insured, it shall include his, her or its insurer as far as practicable."

Preliminarily, it may be asked why Sparks and the defend-

ants in the Sparks suit are so manifestly determined that the former should control the litigation where the result would seem to be of little concern to either. The reason is this: Liberty is the insurance carrier for both Sparks and Huber. For obvious reasons, Liberty did not wish to join its own client as a defendant in its action. But Sparks regards Huber as either wholly or partially liable for the negligence resulting in the injuries to its employees. Furthermore, Huber is a financially responsible Corporation against which a judgment, if obtained, might be collected with comparative ease. Under Sec. 38 of the Act, any amount recovered in excess of the insurance payments reverts to the injured employees. Sparks, therefore, feels that Liberty, in failing to join Huber as a defendant in its action, is rendering a disservice to the interests of its employees. Likewise, McCormick and the Lamborns wish Huber to be joined with them as a co-defendant if for no other reason than that should a joint judgment be obtained against all three, Sparks might elect to issue execution against Huber alone and permit them to escape unscathed.[2]

The question here presented is one of first impression in this State. However, the decision of our Supreme Court in *Silvia v. Scotten,* 2 *W. W. Harr.* 295, 122 *A.* 513, 515, interpreting Sec. 38 of the Workmen's Compensation Act, though not directly in point, nevertheless strongly influences my reasoning in arriving at the ultimate answer. There, the court held that a widow and dependents, having accepted the benefits of the Workmen's Compensation Act, could not maintain an action against a third party tort-feasor allegedly responsible for the injuries for the reason that the employer, having paid compensation, is the only party entitled to sue. Insofar as pertinent here, the court said: "It

---

[2]In 81 *A.* 2d 675 and 83 *A.* 2d 300, I held that Huber could not be joined as a third party defendant in the Liberty case under Rule 14 A of the *Rules of the Superior Court* (identical to the Federal Rule of Civil Procedure, 28 U. S. C. A.) and that the Uniform Contribution Among Joint-Tort-Feasors Act, Vol. 47, *Del. Laws,* Chapt. 151, was not applicable to an accident occurring prior to the date of the passage of that Act.

appears to be the plain intent of the Compensation Act to provide that when compensation is paid, or to be paid, the liability of the third person tort-feasor while continued in full force is nevertheless primarily preserved for the compensating employer. We can gather no other meaning from the language of section 131, which provides that the employer upon paying or becoming liable to pay compensation 'shall be subrogated to the rights of the injured employee or of his dependents.' The effect of this language is in essence to operate as an assignment of all the rights of the employee or his dependents to the employer as soon as the latter pays, or becomes liable to pay, compensation under the act. *Mass. Bonding & Ins. Co. v. San Francisco Rys. Co.*, 39 *Cal. App.* 388, 178 *P.* 974. Unless this be so, the tort-feasor in such cases would be exposed to a double liability, first to the employee, or to the widow, widower or personal representative under the Death Act, and second to the employer under the Compensation Act. To avoid such double liability the latter act in section 131 expressly denies to the employee the right to proceed against both the tort-feasor and the employer, and by necessary construction the same denial of a right to proceed against both is laid upon the dependants. The scheme of subrogating the employer to the rights of the employee and his dependents requires in reason that the tort-feasor should thereafter respond in liability only to the employer. When the employee or his dependents agree to accept compensation from the employer any claim for damages either may have against a third person is surrendered by them in favor of the employer and control over such claim rests in his exclusive possession. As was said by the court in *McGarvey v. Independent Oil Co.*, 156 *Wis.* 580, 146 *N. W.* 895, 'the employer by succession—*ipso facto et eo instanti*—becomes the owner of the right against the wrong-doer.' He may assert it or not as he sees fit."

To the contention that such a result might operate unfairly to the employee in the event the employer did not choose to bring a suit under Sec. 38, the court used this significant language. "* * * The risk that he (employer) will not act to col-

lect full damages from the person liable is a hazard they take in electing to proceed under the Compensation Act. This may not be fair and just to the employee and his dependents. Indeed it would appear to us not to be. But it is the result which the language of the act clearly indicates as the legislative intent, and we have no choice but to observe it."

And, the Superior Court in *Travelers Insurance Company v. E. I. DuPont De Nemours and Company*, 1 *Terry* 285, 9 *A.* 2d 88, 91, had occasion to construe a somewhat related question raised under Sec. 38 of our Compensation Act. Again the court recognized the result arrived at in the *Scotten* case in this language. "Now the injured employee has a right of action against the third person causing the injury, or he has a claim against the employer for compensation, but under the words of the Statute (Sec. 6108) 'he shall not proceed against both'. He has the election and if he chooses to take compensation then comes into play the statutory subrogation of the other right (employer's right to sue). So, too, in the case of the death of the employee, a dependent widow has an election. Having a right to compensation as a dependent, she may elect that benefit or rely upon her right of action under the 'Death Act.' If she takes compensation then her right of action (under the Death Act) is subrogated to the employer. Certain inequitable considerations may arise in the right of the employer to control the litigation and limit the recovery, by settlement or otherwise, to the exact amount of compensation paid by such employer, and thus defeat the claim of the injured employee or widow to the excess damages which might be collectible above the amount of compensation paid. We shall, however, not pause to discuss this question."

It is of interest also to observe that though no dispute existed in this case between the employer and its insurance carrier as to which had the right to sue, yet the court assumed throughout its opinion that the carrier, having paid compensa-

tion to the widow of the deceased employee, was an employer entitled to maintain the action contemplated by Sec. 38.

Three fundamental propositions emerge from a consideration of the two opinions just cited. (1) An employer, once having paid compensation to an injured employee electing to take under the Act, is the sole party having a right to maintain an action against a third party tort-feasor under Sec. 38. That is to say, upon payment by the employer to the employee " 'ipso facto et eo instanti' " the employer " 'becomes the owner of the right against the wrongdoer' ". (2) The employee, having elected to take compensation under the Act, has no further legal right in the matter for, in so doing, his claim by operation of law is assigned to the employer. And even though Sec. 38 provides that he is entitled to any recovery in excess of the amount of compensation paid which may be obtained in a suit by the employer, yet this fact gives him no legal standing for he has no "way of collecting it except as the interest or grace of the employer may prompt him to act". (3) An insurance carrier, having once paid compensation, is an employer within the meaning of Sec. 42 entitled to maintain the action provided for by Sec. 38, at least, where the employer does not challenge the right of the former to sue.

I now proceed to a consideration of the three basic arguments advanced in support of the contention that Sparks is the employer entitled to sue under Sec. 38. First, *Bell Co. v. Rogers,* 3 *W. W. Harr.* 445, 138 *A.* 903 is cited as bearing very strongly on the issue here. In that case, the employer appeared as plaintiff on behalf of the injured employee before the Workmen's Compensation Board. The decision of the Board not being satisfactory to the employer's insurance carrier, the latter attempted to appeal. The Superior Court decided that the carrier, not being a party to the proceeding, could not take an appeal. While it may be admitted that this decision has some bearing upon the present question by way of analogy, I am not persuaded that it is at all decisive. The opinion of the court was extremely short and, obviously, did not have in mind the broad implications

presented by this case. The court was not there concerned with Sec. 38 of the Act but rather with Sec. 18 providing for appeals from decisions of the Board to the Superior Court. Most importantly, however, I regard this decision as reflecting all too clearly the rigid and uncompromising attitude of our courts concerning matters of practice before the inception of the new Rules of the Superior Court. Certainly, I think that such a result would not be conceivable under our present Rules. For instance, compare the present Rules 19, 20, 21, 22 and 24, all identical with the Federal Rules bearing the same number. Accordingly, I decline to regard this case as authoritative, at least insofar as concerns the question presented by the case at bar.

Next it is said that the right to sue in this case is governed by the provisions of Sec. K of the policy of insurance in force between Sparks and Liberty. This section reads as follows: "Subrogation—The Company (Liberty) shall be subrogated in case of any payment under this policy, to the extent of such payment, to all rights of recovery therefor vested by law either in this Employer, or in any employee or his dependents claiming hereunder * * *".

It is urged from the foregoing that Liberty, having by contract restricted its interest in a Sec. 38 proceeding to the comparatively small amount of compensation paid by it to the injured employees cannot now be heard to say that it is entitled to control the whole cause of action which, in this case, amounts to many thousands of dollars over and above the compensation paid.[3] But Sec. 33 of the Act, in effect, renders void any provision of a policy of Workmen's Compensation Insurance inconsistent with the Act itself and, furthermore, there is an endorsement on this very policy to the same effect. For these reasons, I do not regard this argument as acceptable.

Finally, it is urged that the employer (Sparks) being the

---

[3]Liberty had paid about $3000 in compensation. The amount sued for in the *Sparks complaint is $48,000.*

only party which has the interests of its employees at heart, should have the right to maintain the action under Sec. 38, for it, rather than the carrier, would be the more likely to prosecute the proceeding vigorously and with an eye to making the fullest recovery in order that something might be preserved for the injured employee over and above the amount of compensation paid. And for the same reasons, it is argued that the employer, not the carrier, is the only practical party to sue within the meaning of Sec. 42 of the Act. I might just as well state at the outset that these propositions strike me as being without foundation. In the first place, circumstances may be imagined wherein I would seriously question the categorical assumption that the employer is the natural protector of the interests of its employees. Suppose the case of a lazy, careless and trouble making employee who is injured through the alleged negligent act of a third party. Am I to assume that the employer will prosecute an action under Sec. 38 with any more vigor than the carrier? Or, take the case of an injured employee who, after recovery, quits and obtains other employment prior to the filing of a Sec. 38 proceeding. Would his former employer be any more interested in his welfare than the insurer? I doubt it. Now, I concede that Sec. 38 directs that any amount recovered in an action by the employer against a third party over and above the compensation paid belongs to the injured employee. Counsel refers to this right as "the residuum of interest of the employee" and argues that this "residuum of interest" gives the employee some legal status or legal standing in the nature of a contingent interest in a Sec. 38 suit. But the *Scotten* decision precludes any such contention for there it was laid down plainly that the employee has no standing whatsoever in such a suit. His interest is a mere hope that the employer will sue and, in so doing, recover something in excess of the compensation paid. The cause of action belongs to the employer. The employee in electing to take compensation, ceases to have any recognizable legal interest in the matter. I think that this principle is just as applicable to a case where the carrier sues as when the employer sues and I am

unable to accept the contention that the employer should be permitted to sue rather than the carrier upon the somewhat dubious assumption that the former has the best interests of the employee at heart where, in fact, the employee has no interest in any event. This result may work a hardship. Both the *Scotten* and *DuPont* cases have recognized the fact, but I must take the law as I find it.

Sec. 42 states in effect that an employer shall include an insurance carrier "as far as practicable". It is urged that it is not "practicable" here for the carrier to sue because it would not prosecute the case with the same zeal as the employer. Again, I cannot agree. What is or is not "practicable" is a matter of statutory construction and must be premised upon something more than the interests of the employee who, I repeat, has no recognizable legal interest.

I find nothing in this case so far making it impracticable for the carrier to sue. Thus, it follows that the carrier should be included or regarded as an employer insofar as concerns Sec. 42. We have, then, two parties, the employer and the carrier, who come within the definition of the word "employer". Now, which has the superior right to maintain the action? Sec. 38 states in plain terms that the right to maintain such an action shall be in that employer "having paid the compensation or having become liable therefor". Here, the "employer", Liberty, not the employer, Sparks, has paid the compensation. It follows, then, that Liberty has the right to maintain the action. Moreover, I believe that such a result is the more practical solution for, in the final analysis, who among the three has an actual stake in proceeding against a wrongdoer under Sec. 38? The employee has elected to play safe and take compensation and in so doing, ceases to have a legal interest. *Silvia v. Scotten, supra.* The employer has parted with nothing. There remains, then, only the carrier who is out of pocket and not only does sound reason dictate that it should be entitled to maintain the action, but Sec. 38, in my judgment, plainly indicates that it has the right so to do.

Nothing here said should be taken as casting disparagement upon the various arguments advanced by counsel in support of the proposition that Sparks alone is entitled to sue. He has briefed and argued his case with all possible skill. Unfortunately, however, in nearly every direction he turns he is met either with the rationale of *Silvia v. Scotten* or with the necessity of insisting upon a too rigid construction of the word "employer" as it appears in Secs. 38 and 42 of the Act. Actually, I believe that the word (employer) was intended to have a somewhat elastic interpretation. For instance, a reading of the Act as a whole indicates that in many instances the employer alone is intended, not the insurance carrier. On the other hand, depending completely upon the facts, the word when used in other sections, including Sec. 38, may mean either the employer or the carrier. Thus, if the employer is a self-insurer, it would be absurd to argue that anyone but it could sue. Again, assuming that the carrier is completely insolvent and cannot pay compensation, it would seem, though I do not decide so, that the employer alone may sue either upon the theory that it is not "practicable" to consider the carrier as an employer or because Sec. 38 provides that the employer who has paid compensation must institute the action.

Obviously, the conclusion here reached does not pretend to dispose of all imaginable situations involving disputes between the employer and its carrier over the right to sue under Sec. 38. These must be decided as they arise. What I am faced with and what I decide is that an insurance carrier, having paid compensation to an injured employee under the Act, has the right to maintain the action against the wrongdoer under Sec. 38.

Finally, there is the motion to strike the appearance of Liberty's counsel in the Liberty suit based upon the reasoning that he is representing the conflicting interests of the employees and of Huber in the same litigation. This motion is premised upon the principle that the high position of trust and confidence existing between a client and his attorney precludes any conflict

of interest between himself and his client. Numerous cases are cited sustaining this general proposition but in my judgment they are not applicable in this case. True, Liberty's suit is brought in the names of the injured employees and, to the extent that Liberty has refused to join its client, Huber, as a defendant, it may be said superficially that its interests and thus those of its counsel are in opposition to those of the employees. But when analyzed, it is quite apparent that such an argument again ignores one of the basic propositions involved in both the *Scotten* and *DuPont* cases, namely that Liberty, upon payment of compensation to these employees, " '*ipso facto et eo instanti*— becomes the owner of the right against the wrongdoer' ". They, the employees, have no rights—merely a hope. In short, there is no conflict of interest because the employees have no interest. Liberty's counsel is not representing them but rather is prosecuting a cause of action for his client, Liberty, which is the owner of the right.

The motion to strike is overruled.