**Elena M. CLARK et al., Plaintiffs,**

v.

**Thomas R. BROOKS, M.D., et al., Defendants.**

Superior Court of Delaware, New Castle County.

Submitted May 4, 1977.

Decided Aug. 1, 1977.

---

1. Suit was filed within two years from that date.

Gerald Z. Berkowitz, Knecht, Greenstein & Berkowitz, Wilmington, for plaintiffs.

F. Alton Tybout, and Michael F. McGroerty, Tybout & Redfearn, Wilmington, for defendant Blackshear.

Rodney M. Layton, and Jane R. Roth, Richards, Layton & Finger, Wilmington, attorneys for defendant Brooks.

TAYLOR, Judge.

Plaintiff asserted a personal injury claim against the Wilmington Medical Center [Medical Center], Dr. Thomas E. Brooks, a staff surgeon supervisor of surgery, and Dr. Charles Blackshear [defendant], a senior resident, based on surgery performed on

plaintiff by Dr. Blackshear. Plaintiff contends that the surgery was negligently performed in that an artery was punctured during the surgery, and that defendants failed to treat plaintiff's condition to reverse and minimize the damage and hazard which followed the alleged negligent surgery.

Prior to filing suit, plaintiff reached a settlement with Medical Center. In connection with that settlement, plaintiff executed a release which was entitled "Joint Tort Feasor Release" releasing all of plaintiff's claims against Medical Center. The release further provides that:

"This release shall reduce to the extent of the pro rata share of the releasee any damages recoverable by the releasor[s] against any other person whatsoever who was or might be liable to the releasor[s] as a result of the said injury or damages referred to above    . . ."

Subsequent to the settlement with Medical Center, plaintiff brought this action against Dr. Brooks and Dr. Blackshear. Dr. Blackshear has moved for summary judgment on the ground that the release of the employer bars recovery against the employee.

## I

Plaintiff contends that the release of the employer does not release the employee, particularly in view of 10 Del.C. § 6304, which provides that a release of one tortfeasor does not release another tortfeasor except to the extent of the consideration for the release. For purposes of this motion it is assumed that Medical Center's liability arose solely as employer of Drs. Brook and Blackshear and that they were acting as employees of Medical Center in this matter.

10 Del.C. Chapter 63 establishes with respect to tortfeasors certain standards of recovery which were unknown at common law.* 10 Del.C. § 6301 defines joint tortfeasors as "persons jointly or severally lia-

ble in tort for the same injury to person or property". The statutory definition of "joint tortfeasors" differs from the common law definition. At common law the status of joint tortfeasor arose where there existed joint or concurring negligence. *Ferguson v. Davis,* Del.Super., 9 Terry 299, 102 A.2d 707 (1954); *Lutz v. Boltz,* Del.Super., 9 Terry 197, 100 A.2d 647 (1953); *DiStefano v. Lamborn*, Del.Super., 7 Terry 195, 81 A.2d 675 (1951); 9 *ULA* 230–1. Under the Act, the status of joint tort feasor turns on joint and several liability. Ibid.

The Act modified the common law in several respects. It created a right of contribution. § 6302. It recognized that recovery of a judgment against one joint tortfeasor does not discharge other joint tortfeasors. § 6303. It provided that a release by an injured person of one joint tortfeasor does not release other joint tortfeasors "unless the release so provides," but the injured party's claim against other joint tortfeasors is reduced by the amount given for the release. § 6304. By way of clarification it provided that any right of indemnity as it existed prior to the Act is not impaired by the Act. § 6305.

The most widely acclaimed achievement of the Act was its abolition of the common law barrier to the sharing of liability based on the relative degree of wrongdoing among those responsible for a single injury. 9 *ULA* 230–1; 10 Del.C. § 6302. However, the Act also abolished the harsh common law rule which barred an injured party who had released one tortfeasor from liability for the injury from pursuing an action against another tortfeasor for any additional damages which the party's injuries warrant. 10 Del.C. § 6304.

The most startling change made by the Act was to provide a remedy of contribution among tortfeasors. Most of the decisions which discuss the Act have dealt with the question of when a tortfeasor may recover from another tortfeasor. See *Mumford v. Robinson,* Del.Supr., 231 A.2d 477 (1965); *Fields v. Synthetic Ropes, Inc.,* Del.

---

* This chapter was patterned, with only slight modification which is not pertinent here, from the Uniform Contribution Among Tortfeasors Act. 47 Del.Laws Ch. 151; 9 *ULA* 230.

Supr., 215 A.2d 427 (1967); *Lutz v. Boltz,* supra; *Lutz v. Boas,* 40 Del.Ch. 130, 176 A.2d 853 (1961). This suit is not between tortfeasors. This suit is by the injured plaintiff against two tortfeasors after a release has been given to their employer. It involves the applicability of the release provision of the Act. Accordingly, the discussion in this Opinion will not deal with the question of the right of contribution; rather, it will focus on the effect of the release on plaintiff's claim against the employee-doctors.

Prior to its enactment of the Uniform Contribution Among Tortfeasors Act, 10 Del.C. Ch. 63, Delaware accepted the common law rule that where more than one tortfeasor has contributed to the injuries of a plaintiff the release of one tortfeasor barred recovery from the other tortfeasor. *Balick v. Philadelphia Dairy Products Co.,* Del.Super., 5 W.W.Harr. 269, 162 A. 776 (1932); *Raughley v. Delaware Coach Co.,* Del.Super., 8 Terry 343, 91 A.2d 245 (1952).[1]

No Delaware case has been cited which applied the same rule with respect to a claim where the relationship of the actual or prospective defendants was that of employer-employee. It is recognized that the majority of states which have decided the question under common law have held that the release of either the employer or the employee has the effect of releasing the other even though the release made no mention of such release and the parties did not in fact intend to accomplish such release. 92 *A.L.R.*2d 540–5; 126 *A.L.R.* 1199–1207.

According to the annotation in 126 *A.L.R.* 1199–1207, the earliest reported application of this rule in this country was in *Brown v. City of Cambridge,* Mass.Supr.Jud.Ct., 85 Mass. (3 Allen) 474 (1862). The following language in *Brown* gives an insight into the reasoning upon which the rule was founded:

"The defendants contend that the legal effect of this transaction is to discharge them also, and we are of opinion that it has that effect. It is an ancient doctrine that a release to one joint trespasser, or a satisfaction from him, discharges the whole. *Cocke v. Jennor,* Hob. 66. Co. Litt. 232 a. The same doctrine applies to all joint torts, and to torts for which the injured party has an election to sue one or more parties severally. Where, for example, a master is liable for the tort of his servant, a satisfaction from one discharges both, though they cannot be sued jointly. If it were not so, a party having a claim against several persons on account of a single tort might sue one and settle the suit, receiving damages; he might then sue another and settle in the same way, and repeat the proceeding as to all but one, and then sue him and recover the whole damage, as if nothing had been paid by the others. A door would thus be opened to a class of speculations that do not deserve encouragement. The rule of law which makes one satisfaction or release a bar to further claims for the same tort is founded in good reason."

Thus, the master and servant relationship was brought under the same rule which had been applied to common law joint tortfeasors because the Court found them indistinguishable. *Brown* the progenitor of the holdings in the United States, shows that the primary justification for extending the benefit of the release to one who was not named in or directly concerned with the release was the desire to prevent unjust enrichment to the injured party rather than upon a consideration of the relationship between those who had potential liability to the injured party. In *Balick v. Philadelphia Dairy Products Co.,* supra, this Court was able to deal with the problem of unjust enrichment without barring suit against one tortfeasor where a covenant not to sue another joint tortfeasor had been given.

Prosser, *Law of Torts* 301–5 discusses the fallacy of this unjust enrichment argument

1. The English progenitors of this rule are *Hillman v. Uncles,* Skinner 391, 90 Eng. Reprints 174 (1728) and *Thurman v. Wild,* 11 AD & E 456, 113 Eng. Reprints 448 (1840), which in- volved the concept of satisfaction, not release. The failure of the later cases to recognize this distinction is criticized in Prosser, *Law of Torts* 301.

as a basis for extending the benefit of a release to those who were not specifically intended to be benefitted by the release. He shows that the modern and proper answer to this contention is to require the consideration for the release be applied to reduce the total recovery to which plaintiff is entitled for his injuries. 4 *Restatement of Torts* § 885, pp. 460–3 departs to some extent from the common law by permitting a release to limit its effect on other tortfeasors by express language contained in the release.

It is understandable that since the common law treated joint tortfeasors (as defined at common law) and employer-employee as indistinguishable in applying the common law rule as to the effect of a release, so also might the statutory modification of that rule treat them as indistinguishable for that purpose.

When corrective legislation was considered dealing with the subject of recovery between those who are liable to an injured party, the Commissioners on Uniform Laws adopted a definition which looked to the relationship between the wrongdoer and the injured party. 9 *ULA* p. 233.[2]

■ Under the definition of the Uniform Act the only requirement for eligibility under the Act is that the persons "jointly or severally [be] liable in tort for the same injury to the person or property". Under this definition the relationship among themselves of those liable to the injured party or a common basis of liability is not a factor. The terminology used in the Uniform Act, according to the Commissioners' Note, was intended to have the full breadth of that definition and was not intended to be limited by the meaning which prior usage gave to that phrase. 9 *ULA* 235.

■ There can be no contention that a tort committed by an employee for which the employer is liable by reason of the employment falls within the definition of § 1 of the Act. The employee and employer are both liable in tort for the same injury to plaintiff. 2 *Mechem on Agency,* p. 1580, § 2010–11.

It is recognized that if the sole objective of the Act had been to permit one who has been held liable to recover from another who is also responsible for injuries, the inclusion of those for whom the common law had created the remedy of indemnity was inappropriate. However, to the extent that the Act dealt with the harsh common law rule relating to the effect of a release, which was indistinguishably applied to both the common law joint tortfeasor situation and the situations where indemnity has been applied, there was good reason to give full breadth relief. Moreover, the draftsmen recognized that indemnity situations could fall within the Act and provided for the preservation of the right of indemnity. § 6.

■ The title of 1939 Uniform Act and of the Delaware Act, 47 Del.Laws Ch. 151, refers only to "tortfeasors" and makes no reference to joint tortfeasors.[3] Tortfeasor is defined as a wrongdoer or one who commits or is guilty of a tort. *Black's Law Dictionary* 1661; *Ballantine's Law Dictionary* 1284; *Bouvier's Law Dictionary* 1125. An employer who is liable for the negligent act of an employee comes within the definition of tortfeasor, as does the employee. Cf. *Fields v. Synthetic Ropes, Inc.,* supra. The basis of liability of an employer for injuries resulting from negligence of an employee has been reasoned in different terms, 53 *Am.Jur.2d* Master and Servant § 404, pp. 410–11; § 417, pp. 431–2; *Fields v. Synthetic Ropes, Inc.,* supra; but nowhere has it been indicated that the liable employer does not fall into the category of tortfeasor. *Restatement of Agency 2d* § 217A & § 359B Comments recognize that if an agent com-

---

**2.** A forerunner of the Uniform Contribution Among Tortfeasors Act, entitled Model Joint Obligations Act, was approved in 1925, designed to overcome injustices of the common law. 9B *ULA* 355.

**3.** The title of 47 Del.Laws Ch. 151 reads:

"An Act concerning contribution among tortfeasors, release of tortfeasors, procedure enabling recovery of contribution, and making uniform the law with reference thereto."

mits a tort for which the principal is liable, both are tortfeasors. Accordingly, the title of the Act does not prevent § 4 of the Act (10 Del.C. § 6304) from being given its full literal application, including situations where the tortfeasors are employer and employee.

Defendant cites the proposition that while the relationship between employer and employee requires the negligent employee to reimburse the employer wholly for damages recovered against the employer by an injured plaintiff it does not require the employer to reimburse the employee in any degree for damages recovered against the employee. Because reimbursement in the employer-employee situation is unidirectional and is not subject to apportionment between them, defendant contends that the concept of contribution is not applicable. Therefore, defendant contends that none of the provisions of 10 Del.C. Ch. 63 can apply to the employer-employee relationship. Defendant discusses at length the considerations which have entered into the determination of where contribution is applicable. These are only of assistance if defendant's original premise is correct, that § 6304 is only applicable where contribution can be involved. No Delaware case has been cited which focuses on this issue. *Fields v. Synthetic Ropes, Inc.*, supra, is cited for the proposition that an employer and an employee are not joint tortfeasors under the Delaware Act. In *Fields* the Supreme Court was faced with an attempt, as here, to limit rights of an injured plaintiff by the test of contribution among those who were liable for plaintiff's injuries. The Supreme Court refused to apply that limitation. The Supreme Court also concluded that "suit may be brought against an employee, even though the employee, himself, may have immunity from such a suit brought by the particular plaintiff." The significance of this holding to the present case is that it is not a sine qua non that suit could be brought against either or both the employer and the employee in order for suit to be brought against one of them.

Certain principles applicable to the relationship of employer and employee are worthy of mention. Where the sole basis of liability of an employer is the negligence of the employee, if the employer is required to compensate the injured person the employer can ordinarily require the employee to reimburse the employer for the amount paid to the injured person. 1 *Mechem on Agency* § 1275, p. 928, §§ 1293–4, pp. 937–8; 42 *C.J.S.* Indemnity § 21, pp. 597–8; *Losito v. Kruse*, Ohio Supr., 136 Ohio St. 183, 24 N.E.2d 705 (1940); *Restatement of Restitution* § 96, pp. 418–21. Where the sole basis of liability of an employer is the negligence of the employee, the employer cannot be held liable unless the employee is shown to be liable; hence, if absence of culpability on the part of the employee to the injured person has been established by litigation, the employer cannot be held liable to the injured person. 2 *Mechem on Agency* § 2012, pp. 1581–2; *Fields v. Synthetic Ropes, Inc.*, supra. Since the liability of the employer in such cases is dependent upon at least a showing of tort on the part of the employee, it is understandable that some courts have held that where no liability exists on the part of the employee there cannot be liability on the part of the employer and hence they have extended this reasoning to apply to a release of the employee's liability by the injured person. However, rationally the converse does not apply. The employee's liability for his own negligence is not dependent on negligence of the employer nor is the employee entitled to reimbursement by the employer. The ability to sue the employee who committed the tort is not contingent on the ability to sue the employer. Based upon the relationship of the parties no justification exists for extending nonliability of the employer to benefit the employee unless that benefit was created by contract intended to benefit the employee. Hence, the liability of the negligent employee should not be affected by a transaction between the injured party and the employer unless the parties intended the benefit to extend to the employee. The result should not, of course, permit dual

372

recovery by the injured person.[4] In *Smith v. Raparot*, R.I.Supr., 225 A.2d 666 (1967), the Supreme Court of Rhode Island applying an Act of the same wording (for purposes of this discussion) as that adopted in Delaware held that the employer-employee relationship was within the definition of joint tortfeasor as used in the Act and applied the release provision of the Act without regard to the question of whether contribution exists between employer and employee.

Defendant contends that the subsequent action of the Commissioners on Uniform Laws supports the position that the employer-employee relationship is not covered by 10 Del.C. § 6304. The 1955 revision of the Uniform Contribution Among Tortfeasors Act substantially revised the 1939 Uniform Act. 12 Uniform Laws Annotated 63. It eliminated the definition of "joint tortfeasors" which appeared in the 1939 Act and it eliminated use of that phrase. It specifically provided that if indemnity is applicable there cannot be contribution. Ibid, p. 64. This modification reflected the argument of Prosser, *Law of Torts* 310–11 that indemnity and contribution should not be commingled.

The 1955 Uniform Act[5] modified the release section of the 1939 Uniform Act to delete the reference to "joint tortfeasor" and to make the provision applicable to "a release or a covenant not to sue or not to enforce judgment . . . given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death . . .". Both provisions apply to release of persons liable in tort for the same injury. Neither provision by its terms confines its applicability to matters where

contribution is involved. Nor do the Commissioners' Comments accompanying the Acts indicate an intent to limit the effect of the section.

Three factors indicate that the 1955 Revision cannot be viewed as merely a clarification of the intent of the 1939 Uniform Act. Sixteen years passed between the Committee's approval of the 1939 Uniform Contribution Among Tortfeasors Act and the approval of the 1955 revision. The Commissioners' Prefatory Note (1955 Revision) states that the purpose of the 1955 Revision was to "reconcile the serious variations which exist and if generally adopted would eliminate the presently existing condition." 12 *Uniform Laws Annotated* 60. Most of the provisions of the 1939 Uniform Act are substantially revised by the 1955 Revision. Delaware's statute was not modified after the 1955 Revision was promulgated. Hence, the language changes of the 1955 Revision do not affect the Delaware law.

I conclude that plaintiff's execution of a release did not bar plaintiff from the opportunity to seek recovery from Dr. Blackshear, the employee of Medical Center, for additional damages which plaintiff may have suffered in excess of the amount received in the settlement with Medical Center. Whether factual matters concerning the negotiation of the release may have a bearing upon the meaning or effect of the release has not been considered or decided.

II

Defendant contends that since the release by its terms is in full settlement and satisfaction of the damages attributable to Medical Center, its terms contemplate the same result as to defendant Dr. Blackshear,

4. It is recognized that decisions in various states have produced different results and many have not addressed themselves to the considerations discussed above. See 92 *A.L.R.* 2d 534–58.

5. "§ 4. [Release or Covenant Not to Sue] When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,

(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

Medical Center's employee. This contention appears to be founded in part .on the proposition that the employee is one of the persons intended to be released by the release. Only the Wilmington Medical Center, Inc. is named as "the releasee" in the release. The general release language only runs in favor of "the releasee".

■ Defendant's next contention is that the language of the release which releases:

"any other such persons from all claims which the releasors might otherwise have based upon or arising from the pro rata share of the damages or injuries of the releases caused by or attributable to the releasee."

This language must be read in conjunction with the language earlier in the same sentence which reads:

"the release shall reduce to the extent of the pro rata share of the releasee any damages recoverable by the releasors against any other person whatsoever who was or might be liable to the releasors as a result of the said injury or damages . . ."

In *Raughley v. Delaware Coach Co.*, supra, a contention was made that a release which contained language strikingly similar to that used in the present release had the effect of releasing a tortfeasor which was not covered by the specific release language. In *Raughley*, this Court held that the language was merely designed to accomplish a pro rata reduction of any further recovery by plaintiff from another tortfeasor and that it did not effect a total release of tortfeasors not specifically named as a releasee. The Court further recognized that any recovery by the injured plaintiff against the non-released tortfeasor is reduced by the consideration received from the released tortfeasor. The Court also recognized that this type of language is not to be construed as total satisfaction for a plaintiff's injuries. The conclusions of *Raughley* are applicable to the language of the present release.

■ Defendant contends that the liability of Medical Center and that of defendant cannot be pro rated and hence there is no portion of plaintiff's damages remaining after excluding the claim against Medical Center. The argument is that plaintiff's entire damages are "caused by or attributable to" Medical Center, the employer, and hence Medical Center's pro rata share is 100% of plaintiff's claim, leaving no unreleased portion of plaintiff's claim to be asserted against defendant. The application of this language involves the determination of the relative degree of wrongdoing among the tortfeasors—here, between employer and employee. 9 *ULA* 242–3, 245. It has been discussed above that where the sole basis of liability of an employer is the negligence of the employee, the employee can be required to compensate the employer for the amount paid by the employer to the injured person. 1 *Mechem on Agency* § 1275, p. 928, §§ 1293–4, pp. 937–8; 42 *C.J.S.* Indemnity § 21, pp. 597–8; *Restatement of Restitution* § 96, pp. 418–21. Here, the alleged actual wrongdoing was that of the employee. Hence, viewed from the standpoint of the relative liability of the employer and employee, there is no injury which was "caused by or attributable to" the employer, Medical Center, since the injury was caused solely by defendant, and hence, as between them, is attributable totally to defendant.

■ Defendant contends that for purposes of the release defendant is "one with Medical Center". No specific language in the release supports this position. Nor does it follow from the nature of the employer-employee relationship. Under modern practice they may be sued separately, consecutively or jointly by an injured party. 53 *Am.Jur.2d* Master and Servant, § 453, pp. 473–5, 57 *C.J.S.* Master and Servant § 579, pp. 350–2. As discussed earlier in this Opinion, in Delaware there is no principle of unity of employer and employee which extends to an employee the benefit of a release of an employer unless expressly contemplated by the release.

*Restatement of Agency 2d*, § 359B entitled Dealings and Actions Between Injured Party and Principal in the Comments states "If an agent commits a tort for which the

principal is liable, both are tortfeasors." It refers to § 217A for analogous consideration of Dealings and Actions Between Injured Party and Agent. The Comments following § 217A states that "a release given to the agent, without reserving rights against the principal, may discharge the latter." Further, it states "The claim against the principal is diminished to the extent that, by his dealings with the agent, the injured party has interfered with the principal's right to indemnity or contribution against the agent."

I conclude that the language of this release sufficiently preserves plaintiff's claim against defendant and that the release does not interfere with the indemnity rights. Accordingly, the Restatement test when applied in the light of 10 Del.C. § 6304 is met.

■ While the release fails to contain the beneficial language as found in 10 Del.C. § 6304(a), under the accepted principle which prevents unjust enrichment, defendant is entitled to the benefit of the amount received by plaintiff as consideration for the release.

Defendant contends that the negotiations which culminated in the execution of the release support the position that defendant was intended to be released. Plaintiff disputes this. In this posture, defendant is not in a position to prevail at this stage if such evidence should be held to be properly admissible. No ruling is made on that issue.

Defendant's motion is denied.

IT IS SO ORDERED.