VIRGINIA VAN CLEAVE, Appellant, *v.* GAMBONI CONSTRUCTION COMPANY, Respondent.

No. 15820

September 24, 1985                                          706 P.2d 845

*Echeverria, Osborne & Jenkins,* and *Geoffrey White,* Reno, for Appellant.

*Barker, Gillock & Perry,* and *Ken Bick,* Reno, for Respondent.

---

## OPINION

*Per Curiam:*

For the second time, we are asked to review the lower court's order granting summary judgment in this case; one opinion has resulted so far, Van Cleave v. Gamboni Constr., 99 Nev. 544, 665 P.2d 250 (1983) (Gamboni I). In this appeal, appellant Virginia Van Cleave contends that a harsh rule of the common law, *i.e.* that the release of an employee automatically releases the vicariously liable employer, was abrogated in Nevada by the adoption of the Uniform Contribution Among Tortfeasors Act (the Uniform Act). We agree. Because the district court determined that the Uniform Act does not apply to a release affecting vicarious liability, its order granting summary judgment in favor of respondent Gamboni Construction Company is reversed.

### Facts and Procedural History

The facts in this case, as presented in *Gamboni I,* are not in dispute. Van Cleave was rendered a paraplegic as a result of injuries she sustained in a one-car automobile accident in Reno, Nevada, on May 26, 1979. Mark Alimisis, the operator of the car, lost control of the vehicle causing the car to leave the roadway and overturn. Alimisis was allegedly within the scope of his employment with Gamboni Construction Company at the time of the accident.

After filing suit against Alimisis, and other fictitious defendants, Van Cleave settled her action against Alimisis for $50,000. The terms of the printed release "form" document they executed included a typewritten provision apparently intended to expressly reserve Van Cleave's claims against any other parties.

> It is expressly agreed that this does not release anyone other than Mark Alimisis, and all rights against the manufacturer of the vehicle and its component parts, Washoe County *and anyone else,* are reserved.

(Emphasis added.)

After the settlement with Alimisis, Van Cleave amended her complaint, naming Gamboni Construction Company as a defendant. The allegations against Gamboni were limited to liability under the doctrine of respondeat superior, on the basis that Alimisis was within the scope of his employment at the time of the accident.

Gamboni subsequently filed a motion for summary judgment, arguing that a release of its employee releases it from any liability, based on the doctrine of respondeat superior. The district court determined that "as a matter of common law, a release in favor of a negligent employee also releases the employer when the employer's liability is predicated solely on respondeat superior." 99 Nev. at 546. The court concluded that the Uniform Act "did not apply to an employer-employee relationship where the sole basis of the employer's liability was respondeat superior." *Id.* The district court then granted summary judgment in favor of Gamboni.

In *Gamboni I,* we reversed the district court's order granting summary judgment in favor of Gamboni, primarily because the lower court had not construed the document before it granted the motion. We remanded the matter to the lower court because "material questions of fact remain as to whether the agreement in question was a release or a covenant not to sue." 99 Nev. at 548.

After the remand, Gamboni made a motion for summary judgment arguing that as a matter of law, the document, whether construed as a release or a covenant not to sue, is not subject to the Uniform Act, and thus discharges Gamboni from any derivative liability. For the second time, the lower court granted Gamboni's motion for summary judgment. In its order, the lower court determined that the document is a release and discharges Gamboni, by its plain language, and by law, "by virtue of the derivative nature of the claimed liability of Gamboni." The court noted that Van Cleave had offered nothing to allow the court to construe the document otherwise, and that even if it were a covenant not to sue, the document would "inure to the benefit of Gamboni." Once again, Van Cleave appeals the order granting summary judgment in favor of Gamboni.

The issue before us is whether the district court erred in granting summary judgment for Gamboni. Summary judgment is proper only where the moving party has shown that there is no genuine issue as to any material fact, and that it is entitled to a

judgment as a matter of law. NRCP 56(c). Short v. Hotel Riviera, Inc., 79 Nev. 94, 103, 378 P.2d 979, 984 (1963). In considering this issue in the context of Van Cleave's appeal, we must decide whether the Uniform Act applies to vicarious liability situations, so that the release of an employee does not release a vicariously liable employer, unless the terms of the release document so provide.

## Discussion

In 1973, the Nevada Legislature adopted the 1955 revised version of the Uniform Act.[1] NRS 17.225 of the Uniform Act states that the Uniform Act applies "where two or more persons become jointly or severally liable in tort for the same injury to person or property." Courts interpreting this language have had no difficulty applying the Uniform Act to vicarious liability situations involving an employer and employee.

For example, the Alaska Supreme Court has held that a covenant not to sue a servant did not extinguish the wholly derivative liability of a master under the 1955 Uniform Act.[2] Alaska Air-

---

[1]The 1955 Revised Uniform Act was drafted to supersede the 1939 Uniform Act. The Commissioners' Prefatory Note to the 1955 Revised Uniform Act states:

> The proposed Act here submitted would supersede the 1939 Uniform Act, would reconcile the serious variations which exist and, if generally adopted would eliminate the presently existing confusion.

12 U.L.A. 60 (1975).

[2]The 1939 Uniform Act applied only to "joint tortfeasors," and did not include the more carefully drafted language of the 1955 Revised Act. Nonetheless, courts interpreting that language have had no problem applying the provisions of the 1939 Uniform Act to vicarious liability situations. For example, the Idaho Supreme Court considered a case nearly identical to Van Cleave's and held that "joint tortfeasors" has a broad meaning under the Uniform Act, and thus, the master-servant relationship is sufficient to make the parties joint tortfeasors within the meaning and purposes of the 1939 Uniform Act. Holve v. Draper, 505 P.2d 1265, 1267 (Idaho 1973). In reaching its decision, the court considered the commissioner's comments to the release provision of the 1939 Act:

> It was thought wise to obviate what must frequently be considered a technical pitfall by an injured person who releases one of two or more joint tortfeasors for a certain sum, presumably ·approximately the released person's share of the damage, intending to pursue his claim against the others.

505 P.2d at 1268 (citations omitted). The Rhode Island Supreme Court held that the 1939 Act applies to vicarious liability as the master and servant in that case "were joint tortfeasors because concededly upon the occurrence of the tort, they became jointly or severally liable to plaintiff. That being the case the release given by the plaintiff, which by its terms related only to her

lines, Inc. v. Sweat, 568 P.2d 916 (Alaska 1977). That court recognized that "[i]t may be that [the employer] is not technically a 'tort-feasor,' but it is 'one of two or more liable in tort for the same injury.'" 568 P.2d at 930. Similarly, in addressing a settlement and release with a master, rather than with a servant as in Van Cleave's case, the Delaware Supreme Court reasoned that "[t]he point is that both [the employer] and the [employee] are (at least) 'severally' liable for the same injury to plaintiff. Therefore, the Uniform Contribution Among Tort-Feasors [sic] Act applies. We so hold." Blackshear v. Clark, 391 A.2d 747, 778 (Del. 1978). We agree with these courts and hold that because the employer Gamboni, and its employee, Alimisis are both allegedly liable for Van Cleave's injury, the Uniform Act applies.

Gamboni argues that the indemnity language of the Uniform Act shows an intent by the drafters to exclude indemnity actions from the protections of the Uniform Act. We disagree. The Uniform Act states that its provisions do *not* "impair any right of indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation." NRS 17.265. The second sentence in the indemnity section of the Uniform Act was added by the drafters in the 1955 Revised Version. The drafters explain this change by indicating that "the first part of this provision . . . apparently left it uncertain whether there could be contribution in any indemnity situation. . . . It seems clear that there should be no contribution." 12 U.L.A. 66.

Indeed, the indemnity provision of the Uniform Act has, for whatever reason, created some confusion for at least one court in considering the Uniform Act's application to situations involving vicarious liability. Relying on this indemnity language, the Tennessee Supreme Court concluded that the "1955 Act makes it clear that where the right of indemnity exists the act has no application." Craven v. Lawson, 534 S.W.2d 653, 657 (Tenn. 1976). This narrow view has been severely criticized by commentators, as well as the better-reasoned opinions which have addressed this issue.

"The *Craven* decision interpreted the pertinent indemnity section to prevent any contribution, whereas that section can be seen as merely defining the rights among tortfeasors without referring to any right the injured party may have against defendants."

claim against the servant, did not discharge the defendant (employer)." Smith v. Raparot, 225 A.2d 666, 667 (R.I. 1967). Thus, even under the perhaps more narrow language of the 1939 Uniform Act, the provisions of the Uniform Act apply to releases affecting the vicarious liability of the master-servant relationship.

Comment, *The Covenant Not to Sue: Virginia's Effort to Bury the Common Law Rule Regarding the Release of Joint Tortfeasors,* 14 U.Rich.L.Rev. 809, 833 (1980). "The indemnity provisions of the 1955 Revised Act, upon which the [*Craven*] court so strongly relied, merely clarify the nature of the rights of the various tortfeasors among themselves." Comment, *Torts—Vicarious Liability—Covenant Not to Sue Servant or Agent as Affecting Liability of Master or Principal,* 44 Tenn.L.Rev. 199 (1976). The most recent court to consider this issue rejected the *Craven* court's reliance on the indemnity language to exclude vicarious liability because "[i]n the first place, the rights of indemnity and contribution have nothing to do with the rights of the injured party." Harris v. Aluminum Co., 550 F.Supp. 1024, 1034 (W.D.Va. 1982).

We agree with this better-reasoned analysis, and hold that nothing in the indemnity provision of the Uniform Act precludes application of the Uniform Act to situations involving vicarious liability. Our reading of the indemnity language of the Uniform Act indicates that the provision simply states that the vicariously liable employer would have a right to indemnity, rather than contribution. This provision merely provides that no *contribution* exists where *indemnity* exists. As to any subsequent action by the employer against the employee, "[a] primary wrongdoer enters [settlement] agreements at the peril of being later held to respond again in an indemnification action brought against him by the vicarious wrongdoer." Hertz Corp. v. Hellens, 140 S.2d 73, 75 (Fla. 1962). "[W]e must assume that this contingency was foreseen and that this result was felt desirable." Ritter v. Technicolor Corp., 103 Cal.Rptr. 686, 688 (Cal.App. 1972).

Because nothing in the Uniform Act precludes its application to vicarious liability situations, the provisions of the Uniform Act relating to release or covenants not to sue apply to the document executed by Van Cleave and Alimisis.[3] Under the release provision of the Uniform Act, a release of one of two parties liable for Van Cleave's injuries "does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide." NRS 17.245. The release document executed by Van Cleave and Alimisis, then, does not discharge Gamboni, because the terms of the release document expressly provide that it not do so. "Were it otherwise, wrongdoers who do not make or share in making reparation are discharged while one willing to right the wrong and no more guilty bears the whole

---

[3]The Uniform Act makes no distinction between the effects of a release or of a covenant not to sue.

loss." Whittlesea v. Farmer, 86 Nev. 347, 354, 469 P.2d 57, 61 (1970). (ZENOFF, J., concurring.)

We recognize that the expressed public policy established by the Uniform Act is "to encourage rather than discourage settlements." 12 U.L.A. 65. One commentator has recognized that the "release provisions of the 1955 Revised Act were intended to promote settlements, so a construction of the statute should be directed to achieving that objective." Comment, *Torts—Vicarious Liability—Covenant Not to Sue Servant or Agent as Affecting Liability of Master of Principal,* 44 Tenn.L.Rev. 197 (1976).

In the case before us, Van Cleave has settled with the employee, specifically not releasing her claim against the vicarious liable employer Gamboni. If we determined that the Uniform Act does not apply to her claim against the employer, we would be discouraging prompt resolutions of actions, not encouraging such settlements, in contravention of the expressed public policy of the Uniform Act. "An injured party probably would be reluctant to settle with the servant or agent, and thereby extinguish his cause of action against the master or principal, unless he could settle with the servant or agent for an amount sufficient to compensate him for his entire loss." *Id.* at 198. There is no indication, from our review of the record, that in settling promptly with the employee, Van Cleave believed she was settling for her entire loss. In fact, the express reservation of her claims against "anyone else" in the release document indicates that Van Cleave did not believe the settlement with Alimisis was for her entire claim.

We are convinced that our interpretation of the Uniform Act, consistent with most courts which have construed its provisions in vicarious liability situations, best serves the purpose of the statute. "Such a statute is enacted to prevent the harshness of the common-law rule, not to defeat the intentions of the parties and work as a trap for the unwary." *Whittlesea,* 86 Nev. at 354, 469 P.2d at 61.

Accordingly, the order of the district court granting summary judgment in favor of Gamboni is reversed and the case is remanded for a trial on the merits.