Stuart **KRUKIEWICZ**, Tess Ann Krukiewicz, Lynea Krukiewicz, Teresa Krukiewicz, Kynda Krukiewicz, and Krukiewicz Construction Company, a Utah corporation, Plaintiffs and Appellants,

v.

Charles **DRAPER**, Individually, dba Minuteman Service; Mrs. Charles Draper; Minuteman Service; Steven W. Holm; and Mrs. Steven W. Holm; Does I through V inclusive, Defendants and Respondents.

No. 19504..

Supreme Court of Utah.

Sept. 15, 1986.

---

Charles F. Abbott, Provo, for plaintiffs and appellants.

Clark W. Sessions, Patricia A. De-Michele, Salt Lake City, for defendants and respondents.

**STEWART, Justice:**

In September, 1981, the plaintiffs were injured in an automobile collision with an automobile driven by defendant Steven Holm. Steven Holm was an employee of defendant Draper. Pursuant to a settlement executed in November, 1982, Holm paid the plaintiffs $40,000, and the plaintiffs released Holm from further liability, but expressly reserved all rights against Charles Draper, Holm's employer. Subsequently, the plaintiffs sued Draper, and on a motion for summary judgment, the trial court held that the plaintiffs' release of

Holm released Draper from liability as a matter of law under the rule stated in *Holmstead v. Abbott G.M. Diesel, Inc.*, 27 Utah 2d 109, 493 P.2d 625 (1972). This appeal followed.

The sole issue on appeal is whether § 78–27–42 of the Utah Comparative Negligence Act overrules *Holmstead.*

Section 78–27–42 states:

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors, unless the release so provides, but reduces the claim against the other tort-feasors by the greater of: (1) The amount of consideration paid for that release; or (2) the amount or proportion by which the release provides that the total claim shall be reduced.

Section 78–27–40(3) of the Act defines joint tort-feasor in terms of traditional joint and several liability law:

As used in this section, "joint tort-feasor" means one of two or more persons, jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

■ Section 78–27–42 is "by necessary implication" a *pro tanto* repeal of § 15–4–4 of the Joint Obligations Act, U.C.A., 1953, § 15–4–1 to –7, which states that a release of one joint obligor releases all other obligors unless the injured party expressly reserves in writing its rights against the other obligors. Thode, *Comparative Negligence, Contribution Among Tort-Feasors, and the Effect of a Release—A Triple Play by the Utah Legislature*, 1973 Utah L.Rev. 406, 422.[1]

In denying the applicability of § 78–27–42 to this case, Draper argues that since he is an employer and therefore only derivatively liable for the negligence of his employee, he is not a joint tort-feasor with his employee within the meaning of § 78–27–40(3). Therefore, according to Draper, the language in § 78–27–42 preserving rights against joint tort-feasors does not apply. Draper relies on *Holmstead v. Abbott G.M. Diesel, Inc.*, 27 Utah 2d 109, 493 P.2d 625 (1972), where on facts similar to the instant case, the Court held that a covenant not to sue a servant also released the master on

---

**1.** We note, however, that the result in this case would be the same under either § 15–4–4 or

§ 78–27–42, since the plaintiffs did expressly reserve in writing their rights against Draper.

the ground that otherwise the servant would be subject to a suit by the master for indemnification and that the servant in entering into the contract had intended to free himself from all liability arising out of the incident. *Holmstead* followed the common law rule that release of one tort-feasor released all the others. *See, e.g., Clark v. Brooks*, 377 A.2d 365, 369–70 (Del.Super. Ct.1977); *Brown v. City of Cambridge*, 85 Mass (3 Allen) 474, 476 (1862); . Annot., 24 A.L.R.4th 547, 551 (1983); Annot., 126 A.L.R. 1199 (1940); 66 Am.Jur.2d *Release* § 37 (1973).

The background of § 78–27–42, enacted in 1973 as part of the Utah Comparative Negligence Act, §§ 78–27–39 to –43, indicates that it was designed to reverse the common law rule. It was patterned after the Uniform Contribution Among Tortfeasors Act, first promulgated by the National Conference of Commissioners on Uniform State Laws in 1939. 12 U.L.A. 57 (1975). A primary purpose of the Uniform Act was to change the common law rule so that release of one joint tort-feasor did not automatically release all tort-feasors. *E.g., Hayden v. Ford Motor Co.*, 278 F.Supp. 267, 271 (D.Mass.1967); *Waters v. Hedberg*, 126 N.H. 546, 496 A.2d 333, 336 (1985); *Brown v. City of Pittsburgh*, 409 Pa. 357, 186 A.2d 399, 402 (1962); *Smith v. Raparot*, 101 R.I. 565, 225 A.2d 666, 667 (1967).

█ Since § 78–27–42 did change the common law rule, the issue in this case is whether a master is a joint tort-feasor as that term is defined by § 78–27–40(3). This issue has not been addressed in this state heretofore. At common law, the tortfeasor's joint liability arose where there was joint or concurring negligence. *Clark v. Brooks*, 377 A.2d at 368; *Ferguson v. Davis*, 48 Del. 299, 102 A.2d 707, 708 (1954). However, an employer's liability, which under the doctrine of *respondeat superior* has been termed "secondary" or "derivative," arises not as a result of any actual negligence by the employer, but solely because of the employer's employment of the employee. In *Sampay v. Mor-*

*ton Salt Co.*, 395 So.2d 326, 328 (La.1981), the court observed with respect to the doctrine of *respondeat superior:*

> Although the employer and employee are not [common law] tort-feasors, they are nonetheless each obligated for the same thing—total reparation of the damages to the victim. The derivative nature of the employer's liability is of no concern to the victim, and he can compel either the employer or the employee to compensate him for the whole of his damages.

The employer is liable under the doctrine of *respondeat superior*, not because of the employer's actionable fault, but because the employee acts for the employer who reaps the benefits of the employee's acts. Furthermore, the employer can spread the cost of accidents and negligent acts, while the employee cannot. *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 807 (Tex.1980). For those reasons, it has been widely held that an employer is liable for his employee's negligence.

Section 78–27–40(3), patterned after the 1939 Uniform Act, defines a joint tort-feasor in terms of liability, not negligence: joint tort-feasor means "one of two or more persons, jointly or severally liable in tort . . . ." All jurisdictions which have statutes similar to the 1939 version of the Uniform Act have determined that the master-servant relationship is within the Uniform Act's definition of joint tort-feasor. *E.g., Blackshear v. Clark*, 391 A.2d 747, 748 (Del.1978); *Smith v. Raparot*, 225 A.2d at 667; *Holve v. Draper*, 95 Idaho 193, 195, 505 P.2d 1265, 1267 (1973); *Clark v. Brooks*, 377 A.2d at 370. The Delaware Supreme Court, in discussing why the 1939 Uniform Act's definition of joint tort-feasor included the master-servant relationship, stated: ·

> The *basis* of liability is not relevant, nor is the relationship among those liable for the tort. In short, it makes no difference whether the [master's] liability is based upon the doctrine of *respondeat superior* or any other legal concept. The point is that both it and the [servant] are (at least) "severally" liable for the same in-

jury to plaintiff. Therefore, the Uniform Contribution Among Tort-Feasors Act applies. We so hold.

*Blackshear v. Clark*, 391 A.2d at 748.

In 1955 the Uniform Act was revised. The 1955 version of the Uniform Act does not contain a definition of "joint tort-feasor." However, the 1955 Act does state that the release provisions apply "where two or more persons become jointly or severally liable in tort for the same injury to person or property...." All jurisdictions but one which have construed this language, which is essentially identical to the definition of joint tort-feasor contained in the 1939 Act, have also held that the master-servant relationship is subject to the 1955 Act's language making it applicable to those jointly and severally liable in tort. *See, e.g., Harris v. Aluminum Company of America*, 550 F.Supp. 1024, 1030 (W.D. Va.1982); *Van Cleave v. Gamboni Construction Co.*, 706 P.2d 845, 847 (Nev. 1985); *Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916, 929–30 (Alaska 1977). Only one court has held that the language of the 1955 Act which deals with the release of joint tort-feasors does not apply to liability based on a master-servant relationship, *Craven v. Lawson*, 534 S.W.2d 653, 656 (Tenn.1976), and that opinion has been criticized. *Harris v. Aluminum Company of America*, 550 F.Supp. at 1029–30; *Van Cleave v. Gamboni*, 706 P.2d at 848; *Comment, The Covenant Not to Sue: Virginia's Effort to Bury the Common Law Rule Regarding the Release of Joint Tort-feasors*, 14 U.Rich.L.Rev. 809, 833 (1980); *Comment, Torts—Vicarious Liability—Covenant Not to Sue Servant or Agent as Affecting Liability of Master or Principal*, 44 Tenn.L.Rev. 188, 199 (1976).

In sum, we hold in accord with the above authorities, and for the reasons on which they are based, that the term "joint tort-feasor" as used in § 78–27–40(3) includes a master who is vicariously liable for the negligence of a servant and that the indemnity provision of § 78–27–41(2) preserves "[a]ny right of indemnity which may exist under present law." Therefore,

Draper was not released by the release executed between the plaintiffs and Holm.

The indemnity language of § 78–27–41(2) of the Utah Act assures the continuance of the rights and obligations of vicariously liable persons. Thus, a person entitled to indemnity continues to be entitled to indemnity. *Van Cleave v. Gamboni*, 706 P.2d at 848; *Clark v. Brooks*, 377 A.2d at 371; 12 U.L.A. 66. Reading the Act as a whole makes clear that the indemnity and contribution provisions refer only to the rights and obligations of two liable parties, and not to the liability that exists between an injured party and those parties liable at law, on whatever theory the liability may be premised. *See Comment*, 14 U.Rich.L. Rev. at 833; *Comment*, 44 Tenn.L.Rev. at 199. "[T]he rights of indemnity and contribution have nothing to do with the rights of the injured party." *Harris v. Aluminum Company of America*, 550 F.Supp. at 1030. Thus, it is § 78–27–42, the release provision of the Act, not § 78–27–41(2), the indemnity provision, which defines the rights as between the injured party and liable parties.

The argument is made that not extending the benefit of a release of an employee to an employer will not effectuate the policy of encouraging settlements and terminating litigation. *See Holmstead v. Abbott G.M. Diesel, Inc.*, 27 Utah 2d at 114, 493 P.2d at 628. It must be assumed, however, that the Legislature foresaw the possibility of an indemnity action and considered that it was more desirable to perpetuate that right than to impose a limitation on an injured party's recovery if an employer is released along with the employee. *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 305, 702 P.2d 601, 610, 216 Cal.Rptr. 443, 452 (1985); *Ritter v. Technicolor Corp.*, 27 Cal.App.3d 152, 155, 103 Cal.Rptr. 686, 688 (1972).

Reversed and remanded. Costs to appellant.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.