ANTHONY GENE YATES v. NEW SOUTH PIZZA, LTD., D/B/A DOMINO'S PIZZA

No. 176PA91

(Filed 31 January 1992)

**Torts § 7.6 (NCI3d)— covenant not to sue employee—employer not released under respondeat superior**

For purposes of section 1B-4 of the Uniform Contribution Among Tortfeasors Act, a "tortfeasor" is one who is liable in tort and thus includes a vicariously liable employer. Therefore, an injured plaintiff was entitled to proceed against an employer on the theory of respondeat superior after having executed a covenant not to sue the employee or the employee's insurer. N.C.G.S. § 1B-4(1).

**Am Jur 2d, Contribution §§ 41, 68; Master and Servant §§ 408, 409; Release § 38; Torts § 69.**

**Release of (or covenant not to sue) master or principal as affecting liability of servant or agent to tort, or vice versa. 92 ALR2d 533.**

Justice MEYER dissenting.

Chief Justice EXUM and Justice WHICHARD join in this dissenting opinion.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of a unanimous panel of the Court of Appeals, 102 N.C. App. 66, 401 S.E.2d 380 (1991), affirming the judgment of *Beaty*, *J.*, entered 17 May 1989 in Superior Court, FORSYTH County. Heard in the Supreme Court 13 November 1991.

**YATES v. NEW SOUTH PIZZA, LTD.**

[330 N.C. 790 (1992)]

*David F. Tamer for plaintiff-appellant.*

*Womble, Carlyle, Sandridge & Rice, by Allan R. Gitter, Gary W. Jackson, and James R. Morgan, Jr., for defendant-appellee.*

*Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A., by Adam Stein, for North Carolina Academy of Trial Lawyers; Grover C. McCain, Jr., and Bree Andrew, amici curiae.*

FRYE, Justice.

On 5 September 1985, plaintiff was a passenger in an automobile owned by Franklin Hobert Simmons and operated by Lisa Dawn Simmons. Donald Lee Powell, a delivery person for defendant, New South Pizza, Ltd., d/b/a Domino's Pizza, ran a stop sign and collided with the Simmons car. As a result of the collision, plaintiff suffered injuries to his head and right wrist, and permanent damage to his left hip. On 26 August 1987, plaintiff executed a covenant not to sue Powell or his insurer in exchange for $25,000 consideration, the amount of coverage under Powell's insurance policy. The covenant expressly reserved all rights to proceed against defendant, Powell's employer, and reads in relevant part:

> It is understood that [plaintiff] contends there are joint tortfeasors in this matter; to wit, Donald Lee Powell and Domino's Pizza, Inc., said joint tortfeasor relationship arising out of the servant-master relationships and [plaintiff] expressly reserves and maintains his right to pursue any and all claims against Domino's Pizza, Inc. arising out of the incident and that [plaintiff] agrees only not to sue Donald Lee Powell and INA/Action, his vehicular insurance carrier.

The issue before this Court is whether an injured plaintiff is entitled to proceed against an employer on the theory of respondeat superior after having executed, for valuable consideration, a covenant not to sue the negligent employee or his insurer. We hold that such a plaintiff may proceed.

At trial, the employer (defendant) admitted that the employee (Powell) was acting within the scope of his employment when the collision occurred but denied that Powell was negligent in causing the collision. Defendant also moved for summary judgment, arguing that the settlement between plaintiff and Powell operated to release defendant from liability as a matter of law. The trial court granted the motion. The Court of Appeals affirmed the trial court, con-

**YATES v. NEW SOUTH PIZZA, LTD.**

[330 N.C. 790 (1992)]

cluding that the covenant not to sue released any claim against defendant under the doctrine of respondeat superior. The court further held that when there is a right of indemnity from another tort-feasor, the Uniform Contribution Among Tort-feasors Act, N.C.G.S. § 1B-1, *et seq.* (the Act),[1] does not apply. Plaintiff's petition for discretionary review of the unanimous decision of the Court of Appeals was allowed by this Court on 12 June 1991. *Yates v. New South Pizza, Ltd.*, 329 N.C. 276, 407 S.E.2d 855 (1991). We now reverse.

Plaintiff contends that the Court of Appeals erred in holding that the Act does not apply to the present case. Plaintiff argues that the plain language of the Act includes employer-employee liability, and thus a covenant not to sue the employee does not release the employer pursuant to section 1B-4 of the Act. Defendant contends that the Act is irrelevant to the disposition of this case because, *inter alia,* an employer is not a tort-feasor within the meaning of the Act.

We agree with plaintiff that section 1B-4 of the Act controls the disposition of this case. Section 1B-4 of the Act provides:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort for the same injury or the same wrongful death:

(1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,

(2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

N.C.G.S. § 1B-4 (1983). The question of whether this provision applies to vicarious liability in the master-servant context is one of first impression for this Court. Other courts, as noted by the Court of Appeals, have not been uniform in interpreting this provi-

---

1. The Uniform Contribution Among Tort-feasors Act was originally promulgated in 1939 by the National Conference of Commissioners of Uniform State Laws. It was revised in 1955. North Carolina adopted the 1955 version in 1967. 1967 N.C. Sess. Laws ch. 847, § 1.

sion of the Uniform Act. We agree with those courts which have held that this provision does apply to liability that has been vicariously derived. *See, e.g., Alaska Airlines v. Sweat*, 568 P.2d 916, 929 (Alaska 1977) (release of independent contractor negligently performing licensed common carrier's non-delegable duty does not release carrier); *Brady v. Prairie Material Sales, Inc.*, 190 Ill. App. 3d 571, 583, 546 N.E.2d 802, 810 (2d Dist. 1989), *appeal denied*, 129 Ill. 2d 561, 550 N.E.2d 553 (1990) ("Since the servant who acts negligently is obviously a person liable in tort, it is reasonable to conclude that the liability of the master, although derivative, is still a form of liability in tort as that term is used in the Contribution Act, and an employer is also a "tortfeasor" as that term is used in the Contribution Act."); *Van Cleave v. Gamboni Constr. Co.*, 101 Nev. 524, 528, 706 P.2d 845, 848 (1985) ("We . . . hold that because the employer Gamboni, and its employee, Alimisis are both allegedly liable for Van Cleave's injury, the Uniform Act applies."). *Accord Harris v. Aluminum Co. of America*, 550 F.Supp. 1024 (W.D.Va. 1982); *Blackshear v. Clark*, 391 A.2d 747 (Del. 1978) (interpreting the 1939 version of the Act); *Smith v. Raparot*, 101 R.I. 565, 225 A.2d 666 (1967) (interpreting the 1939 version of the Act); *Thurston Metals & Supply Co. v. Taylor*, 230 Va. 475, 339 S.E.2d 538 (1986); *Krukiewicz v. Draper*, 725 P.2d 1349 (Utah 1986) (interpreting the 1939 version of the Act); *contra, e.g., Mamalis v. Atlas Van Lines, Inc.*, 364 Pa. Super. 360, 528 A.2d 1987, *aff'd*, 522 Pa. 214, 560 A.2d 1380 (1989) (interpreting the 1939 version of the Act); *Craven v. Lawson*, 534 S.W.2d 653 (Tenn. 1976). We hold, therefore, that section 1B-4 applies to master-servant vicarious liability, and that on the facts of this case, the covenant not to sue the employee does not release defendant-employer from liability.

We recognize that at common law this Court held that the release of or covenant not to sue the servant also served to release the master. *Smith v. R.R.*, 151 N.C. 479, 66 S.E. 435 (1909). Since the decision in *Smith*, our legislature has adopted the Uniform Contribution Among Tort-feasors Act. 1967 N.C. Sess. Laws. ch. 847, § 1. The question becomes, therefore, whether the Act changes this holding in *Smith*. Defendant argues that the Act is not applicable to the present situation because a vicariously liable master is not a wrongdoer and therefore not a "tort-feasor." Although defendant's argument finds support in our case law prior to the adoption of the Uniform Act, *see Smith*, 151 N.C. at 481-82, 66 S.E. at 436, we believe the Act broadens the definition of "tort-

## YATES v. NEW SOUTH PIZZA, LTD.

feasor" to encompass a vicariously liable master. Stated differently, *for purposes of this Act*, a "tort-feasor" is one who is liable in tort.

An analysis of the 1939 Act and its 1955 revision supports our conclusion. The 1939 Act defined "joint tort-feasors" broadly:

> For the purposes of this chapter[,] the term 'joint tort-feasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

*Raparot*, 101 R.I. at 567, 225 A.2d at 667 (quoting section 1 of the 1939 version of the Act) (our emphasis). This language clearly includes master-servant vicarious liability. *See id.* ("That [definition] is plain and unambiguous. It declares its own sensible meaning and leaves no room for judicial construction."). Although this definition was omitted from the 1955 Act,[2] we believe the 1955 Act is consistent with this broad definition. For example, section 1B-1(a) provides as follows:

> Except as otherwise provided in this Article, where *two or more persons become jointly or severally liable in tort for the same injury* to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against any or all of them.

N.C.G.S. § 1B-1(a) (emphasis added). More importantly, as we have noted, section 1B-4 provides that when a release or covenant not to sue is given in good faith "to one of two or more persons liable in tort for the same injury or the same wrongful death," it does not discharge "any of the other tort-feasors from liability." Clearly, both the master and the servant are "persons liable in tort for the same injury," and "tort-feasors" as used in this provision refers

---

2. The term "joint tort-feasor" and its definition were not included in the 1955 version of the Act because the term "joint tort-feasor" in the 1939 Act led to confusion:

> The term 'joint tort-feasors' was not used in the Uniform Act in order to avoid confusion in those jurisdictions where persons who act independently, and not in concert, cannot always be joined as defendants.

T. Merritt Bumpass, Jr., Comment, *North Carolina Legislation: An Act Providing for Contribution Among Joint Tort-Feasors and Joint Obligors*, 5 Wake Forest Intra. L. Rev. 160 (citing Uniform Act, section 1, Commissioner's Note Subsection (a)). The term "joint tort-feasor" was replaced with "tort-feasor." Neither the 1955 Uniform Act nor the North Carolina statute defines "tort-feasor."

to those persons liable in tort. We agree with the Alaska Supreme Court that such language "is intended to include those vicariously liable." *Sweat*, 568 P.2d at 930; *accord Krukiewicz*, 725 P.2d at 1352. We therefore hold that the provisions of N.C.G.S. § 1B-4 apply to situations involving master-servant vicarious liability, such as in the instant case.

Defendant also suggests that section 1B-1(f) of the Act excludes indemnity actions. We disagree. Section 1B-1(f) reads:

> This Article does not impair any right of indemnity under existing law. Where one tort-feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

N.C.G.S. § 1B-1(f) (1983). We agree with the Supreme Court of Nevada that nothing in this provision precludes application of the Act to situations involving vicarious liability. *Van Cleave*, 101 Nev. at 529, 706 P.2d at 848. The provision "simply states that the vicariously liable employer would have a right to indemnity, rather than contribution. This provision merely provides that no *contribution* exists where *indemnity* exists." *Id.; see also* 12 U.L.A. cmt. 66 (1975) (second sentence of this provision added by drafters in 1955 revision to make clear that in cases of vicarious liability there should be indemnity and not contribution); *Sweat*, 568 P.2d at 930 n.19 ("Alaska's act is expressly intended to cover situations covering vicarious liability which is one reason for inclusion of subsection (f).").

In its opinion, the Court of Appeals noted that because a right of indemnity remains against a servant who has settled with the injured party, the servant effectively gains nothing. *Yates*, 102 N.C. App. at 71, 401 S.E.2d at 383. Thus, the underlying policy of the statute to encourage settlements is undermined. *Id.* We do not agree. Although the Court of Appeals is correct that the servant remains liable to the master, in practice, the master may elect not to seek indemnification. This is especially true in cases such as this one where the servant's settlement was for the entire amount of his insurance coverage. Given that the master may choose not to seek indemnity from his servant, who in many cases may be judgment proof, the servant's settlement with the injured party fulfills the underlying policy of the Act.

YATES v. NEW SOUTH PIZZA, LTD.

[330 N.C. 790 (1992)]

Having determined that "tort-feasor" under the Act includes vicariously liable employers, we turn to the simple facts of this case. Plaintiff, in good faith, executed a covenant not to sue the employee or the employee's insurer, expressly reserving the right to sue defendant. Therefore, pursuant to N.C.G.S. § 1B-4(1), defendant was not discharged from liability. Accordingly, the decision of the Court of Appeals is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice MEYER dissenting.

I dissent from the majority opinion for the following reasons.

The majority errs when it concludes that N.C.G.S. § 1B-4 (governing contribution among tort-feasors) controls the outcome here. Traditional tools of statutory construction require that the principles of common law, rather than the statute, dictate the outcome in this case.

As an initial matter, the majority misconstrues the plain language and intent of N.C.G.S. § 1B-4, concluding that "the Act broadens the definition of 'tort-feasor' to encompass a vicariously liable master." When technical terms or terms of art are used in a statute, they are presumed to have been used with their technical meaning in mind. *Black v. Littlejohn*, 312 N.C. 626, 325 S.E.2d 469 (1985). Where the language of a statute is clear and unambiguous, there is no room for judicial construction, and the Court must give the language its plain and definite meaning and resist the temptation to interpolate or superimpose provisions and limitations not contained therein. *State v. Camp*, 286 N.C. 148, 209 S.E.2d 754 (1974).

Such should be the case with respect to the term "tort-feasor" as used in N.C.G.S. § 1B-4. "Tort-feasor" is defined as "[a] wrongdoer; an individual or business that *commits* or *is guilty of a tort.*" *Black's Law Dictionary* 1489 (6th ed. 1990) (emphasis added). This Court has evinced an identical view. "To make persons joint tort feasors they must actively participate in the act which causes the injury." *Brown v. Louisburg*, 126 N.C. 701, 703, 36 S.E. 166, 167 (1900). In *Bowen v. Ins. Co.*, 270 N.C. 486, 491-92, 155 S.E.2d 238, 242-43 (1967), we stated that with "joint tort-feasors, although there is a single damage done, there are several wrongdoers. The act

YATES v. NEW SOUTH PIZZA, LTD.

[330 N.C. 790 (1992)]

inflicting injury may be single, but back of that, and essential to liability, lies some wrong done by each tort-feasor contributing in some way to the wrong complained of." In *White v. Keller*, 242 N.C. 97, 100, 86 S.E.2d 795, 797 (1955), we said: "Joint tort-feasors are those who act together in committing a wrong, or whose acts, if independent of each other, unite in causing a single injury." Indeed, the author of today's majority opinion recognized that one must be *actively* negligent in order to be a "tort-feasor":

> [T]he right to contribution does not exist unless two or more parties are joint tortfeasors. Two or more parties are joint tortfeasors when their *negligent* or *wrongful* acts are united in time or circumstance such that the two acts constitute one transaction or when two separate acts concur in point of time and place to cause a single injury.

*State Farm Mut. Ins. Co. v. Holland*, 324 N.C. 466, 470, 380 S.E.2d 100, 102-03 (1989) (Frye, J.) (citations omitted) (emphasis added); *see also* Robert E. Lee, *North Carolina Law of Agency and Partnership* at 32 (6th ed. 1977) ("a joint tort is not actually involved when a master is held liable on the doctrine of respondeat superior; the master has not participated").

Cases from other jurisdictions to the same effect are numerous. In *McCall v. Roper*, 685 P.2d 230 (Colo. Ct. App. 1984), the Colorado Court of Appeals said:

> In *Hamm v. Thompson*, 143 Colo. 298, 353 P.2d 73 (1960), the court stated:

> > "[T]he common law rule prohibiting contribution between joint tortfeasors does not apply to a master whose liability for the torts of his servant is based on respondeat superior, for even though the liability is joint and the two may be joined in one action, they are not joint tortfeasors."

> In applying the principles of *Hamm v. Thompson* here, we note that [defendant's] liability for McCall's injury was vicarious, based solely upon the family car doctrine. As such, this situation is no different than a respondeat superior situation in which the liability of the servant is imputed to the master. Therefore, although jointly and severally liable for McCall's injury, [defendant] and [defendant's son] are not joint tortfeasors.

The court in *Hamm v. Thompson* cited with approval 1 *F. Harper & F. James, Torts* § 10.1 (1956). That section provides:

> "[A] joint tort is not actually involved when a master or a principal is held liable respectively for his servant's or agent's wrong . . . . The master or principal has not participated in the planning or the consummation of the tort; his liability is based instead on the doctrine of respondeat superior, which is grounded in the law of agency."

*Id.* at 232.

In *Bristow v. Griffitts Constr. Co.*, 140 Ill. App. 3d 191, 488 N.E.2d 332 (1986), the Illinois Court of Appeals said:

> The resolution of this case depends upon the meaning of the word "tortfeasors" . . . . The plaintiffs maintain the word is synonymous with the phrase "one or more persons liable in tort arising out of the same injury." A tortfeasor has also been defined as a "wrong-doer; one who commits or is guilty of a tort." Under the doctrine of vicarious liability, . . . the employer is held liable as a matter of policy, but he is not a wrongdoer. The liability of the master and servant for the acts of the servant is deemed that of one tortfeasor and is a consolidated or unified one. The master, therefore, would not be "any of the other tortfeasors."
>
>           . . . .
>
>           . . . We, therefore, find a party whose liability is solely derivative is not "any of the other tortfeasors" . . . . [T]he covenant not to sue the employee discharged the employer's vicarious liability.

*Id.* at 193-94, 198-99, 488 N.E.2d at 334-35, 338 (citations omitted).

In *Elias v. Unisys Corp.*, 410 Mass. 479, 573 N.E.2d 946 (1991), the Massachusetts Supreme Judicial Court said:

> The [contribution among tortfeasors] statute relied on by the plaintiffs applies only to joint tortfeasors, those "jointly liable in tort" for an injury. We have defined joint tortfeasors as "two or more wrong-doers [who] negligently contribute to the personal injury of another by their several acts." The plaintiffs acknowledge that Unisys, whose liability is based

YATES v. NEW SOUTH PIZZA, LTD.

[330 N.C. 790 (1992)]

solely on the theory of respondeat superior, is not a joint tortfeasor with its employee. It follows that the statute, by its express terms, does not apply to the case.

The plaintiffs urge, however, that we invoke common law decision-making to apply the principles stated in the statute to their situation. They claim essentially that Unisys and its negligent employee should be treated like joint tortfeasors, thus permitting the plaintiffs . . . to maintain an action against Unisys after having released its employee from liability. Because the principles of joint liability which underlie the statute are distinct from the principles of vicarious liability, we decline to extend the statute in the manner requested by the plaintiffs.

. . . .

. . . The outcome sought by the plaintiffs would tend to obliterate the distinctions discussed above and unsettle principles of well-established law.

*Id.* at 480-81, 483, 573 N.E.2d at 947, 948 (citations omitted) (footnote omitted).

In *Theophelis v. Lansing General Hosp.*, 430 Mich. 473, 424 N.W.2d 478 (1988), the Michigan Supreme Court said this:

Plaintiffs argue that the word "tortfeasors" in the statute includes persons whose liability is based solely upon the theory of respondeat superior, as in the case of principal and agent. We disagree.

The Michigan contribution act does not include a definition of the terms "1 of 2 or more persons liable in tort," or "other tort-feasors," as used in . . . § 2925d [of the Michigan act]. The Uniform Contribution Among Tortfeasors Act, 12 ULA 63, § 4 (1955 rev), upon which the Michigan act is based, likewise fails to define the term "tortfeasor." Hence, the present question has arisen, and a split has developed among the jurisdictions as to whether a vicariously liable principal is a "tortfeasor" for purposes of § 2925d.

. . . .

. . . The principal, having committed no tortious act, is not a "tortfeasor" as that term is commonly defined. . . .

YATES v. NEW SOUTH PIZZA, LTD.

[330 N.C. 790 (1992)]

. . . [T]he statute did not abrogate the common-law rule that release of an agent discharges the principal.

. . . .

Section 2925d of the contribution act which is invoked by the plaintiff in this case makes clear that a release or a covenant not to sue given to *A* would not discharge the "other tortfeasors" (*B* and *C*) from liability. However, the statute says no more, leaving in place the deep-rooted common-law principle that the release of *A* would discharge his principal. Any other result would be illogical and unjust because release of the agent removes the only basis for imputing liability to the principal.

*Id.* at 481-82, 483, 484, 491, 424 N.W.2d at 481-82, 483, 486 (citations omitted) (footnotes omitted).

In *Kinetics, Inc. v. El Paso Products Co.*, 99 N.M. 22, 653 P.2d 522 (Ct. App. 1982), the New Mexico Court of Appeals said:

In the case at bar, the liability of El Paso Products was, if at all, vicarious. Because the respondeat superior form of vicarious liability is imposed upon one party through a legal fiction, the parties are not joint tortfeasors. If the parties are not joint tortfeasors, it is elementary that the Uniform Contribution Among Tortfeasors Act does not apply.

*Id.* at 28, 653 P.2d at 528 (citations omitted).

In *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380 (1989), the Supreme Court of Pennsylvania related:

[A]n agent and its principal are not joint tortfeasors under UCATA [the Uniform Contribution Among Tortfeasors Act] when the liability of the principal is vicarious liability and is not based upon the principal's independent actionable fault.

*Id.* at 216, 560 A.2d 1381.

In *Craven v. Lawson*, 534 S.W.2d 653 (Tenn. 1976), the Supreme Court of Tennessee said:

[P]laintiff reasons that the language of the Act embraces vicarious tort-feasors as well as joint tort-feasors and active-passive tort-feasors by the use of the language "one (1) of two (2) or more *persons liable in tort for the same injury.*"

The argument is persuasive; however, our research convinces us that it was not the intent of the Commissioners on Uniform State Laws nor of our Legislature to embrace the derivative or vicarious liability of masters or principals within the scope of [the Act].

*Id.* at 655-56 (citations omitted).

In abrogating the long-held definition of "tort-feasor," the majority blurs the important distinction between vicarious and direct liability, legal principles that undergird the law of torts. This crucial distinction has been recognized by courts elsewhere in their consideration of the same matter faced by the Court today.

In *Bristow* the Illinois Court of Appeals said:

[T]he doctrine of vicarious liability is not based upon fault but upon a policy of proper allocation of the risk. As between the master and the innocent third party, the doctrine requires the master to bear any loss for his servant's negligence. The master, however, is not at fault; rather, the servant's negligence is imputed to the master. As between the master and the servant, it is the servant who should bear the entire loss. In the case of vicarious liability, therefore, there is a sound basis for indemnity but not for any apportionment of damages between the master and servant.

. . . Applying the Act in situations where one party's liability is derivative would be repugnant to the central purpose of the Act.

*Bristow*, 140 Ill. App. 3d at 198, 488 N.E.2d at 337-38.

In *Elias*, the Massachusetts Supreme Judicial Court said:

Underlying the concept of joint liability is the principle that all joint (or concurrent) tortfeasors are independently *at fault* for their wrongful acts. . . . [The Act] permits a plaintiff to bring an action against one joint tortfeasor after having released another joint tortfeasor from liability. By contrast, the principles of vicarious liability apply where only the agent has committed a wrongful act. The principal is *without fault*. The liability of the principal arises simply by the operation of law and is only derivative of the wrongful act of the agent. Because of this, established case law holds that a general release given to an agent will preclude a subsequent action against

his principal. In asking us to change this rule of law, the plaintiffs would have us ignore the basic and significant distinctions between vicarious and joint liability . . . .

*Elias*, 410 Mass. at 481-82, 573 N.E.2d at 947-48.

In *Kinetics, Inc.*, the New Mexico Court of Appeals said:

The definition of vicarious liability is indirect legal responsibility. In *Dessauer v. Memorial General Hospital*, 96 N.M. 92, 628 P.2d 337 (Ct.App.1981), the following definition of vicarious liability is provided:

Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other. Its true basis is largely one of public or social policy under which it has been determined that, irrespective of fault, a party should be held to respond for the acts of another.

*Kinetics, Inc.*, 99 N.M. at 27, 653 P.2d at 527 (Ct. App.) (quoting *Dessauer v. Memorial Gen. Hosp.*, 96 N.M. 92, 108, 628 P.2d 337, 353 (Ct. App. 1981) (Sutin, J., concurring)).

In *Mamalis*, the Supreme Court of Pennsylvania stated:

The Superior Court succinctly summarized the distinction between the concept of liability vicariously imposed by law and the purpose behind UCATA, stating,

The rules of vicarious liability respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor. Upon a showing of agency, vicarious liability increases the likelihood that an injury will be compensated, by providing two funds from which a plaintiff may recover. If the ultimately responsible agent is unavailable or lacks the ability to pay, the innocent victim has recourse against the principal. If the agent is available or has means to pay, invocation of the doctrine is unnecessary because the injured party has a fund from which to recover.

The system of contribution among joint tortfeasors, of which the Uniform Act's apportionment rules are a

**YATES v. NEW SOUTH PIZZA, LTD.**

[330 N.C. 790 (1992)]

key component, has arisen completely apart from the system of vicarious liability and indemnity and meets an entirely distinct problem: how to compensate an injury inflicted by the acts of more than one tortfeasor. Unlike the [indirect or derivative] liability of a principal, the liability of a joint tortfeasor is direct (because the tortfeasor actually contributed to the plaintiff's injury) and divisible (since the conduct of at least one other also contributed to the injury).

*Mamalis v. Atlas Van Lines, Inc. et al.*, 364 Pa.Super. 360, 365-366, 528 A.2d 198, 200-201 (1987).

We hold that absent any showing of an affirmative act, or failure to act when required to do so, by the principal, termination of the claim against the agent extinguishes the derivative claim against the principal. A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor. There was no evidence introduced to establish acts of the principal that would make Atlas's liability anything other than vicarious. We find that UCATA is inapplicable to the factual circumstances of this case.

*Mamalis*, 522 Pa. at 220-21, 560 A.2d at 1383.

In short, the majority's conclusion that a vicariously liable defendant is a "tort-feasor" exists in stark contrast to North Carolina law as it has existed for over ninety years as well as in contrast to the law of many other states. The conclusion that New South Pizza, an employer derivatively liable under only the doctrine of respondeat superior, is a "tort-feasor" blurs the significant distinction between vicarious and joint liability and is completely unsupportable given our understanding of that term.

Similarly, the majority errs in its construction of N.C.G.S. § 1B-4 when it infers from the structure of the statute itself that the legislature intended those merely vicariously liable to be "liable in tort" and thus joint "tort-feasors." While the statute's prefatory sentence speaks of "one or more persons liable in tort," the succeeding subparagraphs speak with particularity of "other tort-feasors," "the tort-feasor," and "any other tort-feasor." As the majority itself concedes, the term "tort-feasor" is not defined in the Act. Nevertheless, the majority states that necessarily "both

**YATES v. NEW SOUTH PIZZA, LTD.**

[330 N.C. 790 (1992)]

the master and the servant are 'persons liable in tort for the same injury,' and 'tort-feasors' as used in [the Act] refers to those persons liable in tort." On this basis, the majority concludes that under N.C.G.S. § 1B-4, a master, wholly lacking in active involvement in the alleged tort, is a "tort-feasor" and therefore remains liable notwithstanding the release from liability of the directly culpable servant.

We are obligated to interpret all acts of the legislature so as to give meaning to *all* language used. *Domestic Elec. Service, Inc. v. City of Rocky Mount*, 285 N.C. 135, 203 S.E.2d 838 (1974). If we do not give some meaning to the term "tort-feasor" other than merely a "person liable in tort," the term becomes superfluous, and we have not given meaning to *all* the language used. The majority's view that N.C.G.S. § 1B-4 somehow broadens the legal definition of tort-feasor to include the status of master is a blatant exercise in improper statutory construction. "It is a recognized principle of statutory construction[ ] that when words of general import, the subject of a statute, are followed by words of particular or restricted import relating to the same subject matter, the latter will operate to limit or restrict the former." *In re Steelman*, 219 N.C. 306, 311, 13 S.E.2d 544, 547 (1941). Here, words of general import ("one or more persons liable in tort") are followed by specific language ("tort-feasor(s)"). Thus, the generalized language, to which the majority attaches such great importance, seen in the context of the later, more specific terms, in no way can be seen to validate the majority's conclusion that a vicariously liable master is subject to N.C.G.S. § 1B-4.

Also, it is plain from the nature of N.C.G.S. § 1B-4 itself that the majority errs in the application of that statute altogether. N.C.G.S. § 1B-4 is contained in the "Uniform Contribution Among Tortfeasors Act" and as such pertains only to *contribution*. *Equipment Finance Corp. v. Scheidt*, 249 N.C. 334, 106 S.E.2d 555 (1959) (when meaning of statute is in doubt, reference may be had to title and context in order to ascertain legislative intent). It is hornbook law that "rights of contribution and indemnity are mutually inconsistent; the former assumes joint fault, the latter only derivative fault." *Edwards v. Hamill*, 262 N.C. 528, 531, 138 S.E.2d 151, 153 (1964); *see also State Farm Mut. Auto Ins. Co. v. Holland*, 324 N.C. 466, 471, 380 S.E.2d 100, 102 (1989) (no right of contribution unless both parties are active tort-feasors). Indeed, the distinction between the doctrines of indemnity and contribution is explicitly

YATES v. NEW SOUTH PIZZA, LTD.

[330 N.C. 790 (1992)]

preserved by N.C.G.S. § 1B-1(f), which provides: "This Article does not impair any right of indemnity under existing law." N.C.G.S. § 1B-1(f) (1988). Because New South Pizza is at best "derivatively" liable here, contribution is not implicated. Therefore, the common law principle that the discharge of the servant requires the discharge of the master, rather than N.C.G.S. § 1B-4, should control. *See Smith v. R.R.*, 151 N.C. 479, 66 S.E. 435 (1909).

The majority cites eight cases for the proposition that, under the Uniform Act, a release of the servant does not release the master. Three of the cases, *Blackshear v. Clark*, 391 A.2d 747 (Del. 1978), *Smith v. Raparot*, 101 R.I. 565, 225 A.2d 666 (1967), and *Krukiewicz v. Draper*, 725 P.2d 1349 (Utah 1986), interpret the 1939 Model Act, which contained the "joint tortfeasor" language not contained in the 1955 Act or in our Act. Two cases cited, *Harris v. Aluminum Co. of America*, 550 F. Supp. 1024 (W.D. Va. 1982), and *Thurston Metals & Supply Co. v. Taylor*, 230 Va. 475, 339 S.E.2d 538 (1986), interpreted a contribution statute not containing the important indemnity provision contained in ours. A sixth case, *Brady v. Prairie Material Sales, Inc.*, 190 Ill. App. 3d 571, 546 N.E.2d 802 (1989), is from a jurisdiction in which the circuit courts are divided on this issue. *See Bristow v. Griffitts Constr. Co.*, 140 Ill. App. 3d 191, 488 N.E.2d 332. There are a substantial number of cases that hold to the contrary. *See, e.g., McCall v. Roper*, 685 P.2d 230 (Colo. Ct. App.) (vicarious liability theory of family car doctrine, like master-servant, does not make defendants joint tort-feasors); *Bristow v. Griffitts Constr. Co.*, 140 Ill. App. 3d 191, 488 N.E.2d 332 (respondeat superior theory involving employer-employee as defendants does not make defendants joint tort-feasors); *Elias v. Unisys Corp.*, 410 Mass. 479, 573 N.E.2d 946 (same); *Theophelis v. Lansing General Hosp.*, 430 Mich. 473, 424 N.W.2d 478 (same); *Kinetics, Inc. v. El Paso Products Co.*, 99 N.M. 22, 653 P.2d 522 (Ct. App.) (same); *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380 (respondeat superior theory involving principal-agent does not make defendants joint tort-feasors); and *Craven v. Lawson*, 534 S.W.2d 653 (Tenn.) (vicarious liability theory involving driver and owner of car does not make defendants joint tort-feasors). Thus, our 1909 case of *Smith v. R.R.* is followed by the better-reasoned modern cases from other jurisdictions. *See also* 53 Am. Jur. 2d *Master and Servant* § 408 (1970); Vitauts N. Gulbis, Annotation, *Release of, or Covenant Not to Sue, One Primarily Liable for Tort, but Expressly Reserving Rights Against*

*One Secondarily Liable, as Bar to Recovery Against Latter*, 24 A.L.R.4th 547 (1983 & Supp. 1991).

Furthermore, the majority is wrong when it states that its interpretation serves the policy and ends of N.C.G.S. § 1B-4. The Uniform Act was enacted to serve two purposes. First, it was intended to "distribute the burden of responsibility equitably among those who are jointly liable and thus avoid the injustice often resulting under the common law." Unif. Contribution Among Tortfeasors Act, 12 U.L.A. commissioners' prefatory note (1955 rev.), at 59 (1975). Second, the Act was designed to encourage settlements.

The majority's decision to impose liability on a vicariously liable principal when the agent has been discharged from liability promotes neither of these goals. The avowed interest in avoiding injustice is already well served by N.C.G.S. § 1B-1(f), which provides that the Act "does not impair any right of indemnity under existing law." Moreover, under the majority's view, incentives for settlement will be lessened: even if a servant and plaintiff enter into a covenant not to sue, the servant remains potentially liable as an indemnitor. *See Bristow v. Griffitts Constr. Co.*, 140 Ill. App. 3d 191, 198, 488 N.E.2d 332, 338 (settlement encouraged by discharge of employer upon discharge of employee); *Elias v. Unisys Corp.*, 410 Mass. 479, 483-84, 573 N.E.2d 946, 948-49 (settlement is discouraged by continuing threat of indemnity); Darrell L. West, Comment, *Torts—Vicarious Liability—Covenant Not to Sue Servant or Agent as Affecting Liability of Master or Principal*, 44 Tenn. L. Rev. 188, 198 (1976) (settlement encouraged by discharge); T. Merritt Bumpass, Jr., Comment, *North Carolina Legislation: An Act Providing for Contribution Among Joint Tort-feasors and Joint Obligors*, 5 Wake Forest L. Rev. 160, 175-76 (1968) (same). The majority's cavalier assertion that "in practice the master may elect not to seek indemnification" is unconvincing not only as an empirical matter, but also given the explicit policy goals of the Act itself.

After recognizing that North Carolina adopted the 1955 version of the Uniform Act, and further admitting that the term "joint tortfeasor(s)" was deleted from the 1955 Act and does not appear in our Act, the majority relies almost entirely upon the 1939 Act to declare that, *"for purposes of this Act,* a 'tort-feasor' is one who is liable in tort."

This focus upon the 1939 Act once again points up the error in the majority opinion. The 1939 Act not only contained the "joint

**YATES v. NEW SOUTH PIZZA, LTD.**

[330 N.C. 790 (1992)]

tortfeasor" language later deleted in the 1955 Act, but also lacked a critical provision regarding indemnity that appears in the 1955 Act and distinguishes the two Acts. *See Craven v. Lawson*, 534 S.W.2d 653, 656-57 (Tenn.).

Further, the majority's consideration of what amounts to the legislative history of N.C.G.S. § 1B-4 is improper. In construing a statute, legislative purpose is first ascertained from the plain words of the statute. *Electric Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 403 S.E.2d 291 (1991). Only if, after analyzing the text, structure, and policy of the statute, the Court is still unsure as to legislative intent, may we consult the legislative history of a statute. *Id.* The plain language here makes clear that a vicariously liable principal is not a "tort-feasor," and because indemnity rather than contribution is at issue, N.C.G.S. § 1B-4 is not at play. Moreover, the dual policies of the Act are not served by the majority's expansion of the law. Therefore, the majority's resort to the 1939 and 1955 Model Acts is not only disingenuous, but is improper as well. *Id.*

Finally, I am unpersuaded by the majority's assertion that N.C.G.S. § 1B-4 overrides the holding in *Smith v. R.R.*, 151 N.C. 479, 66 S.E. 435, that the discharge from liability of the servant also discharges the master. In *Smith*, plaintiff sued to recover damages for an injury suffered while he was employed by a construction company engaged in the construction of a railroad section. In exchange for consideration, plaintiff covenanted with defendant construction company not to sue further for any recovery against the company. The Court concluded that the release from liability between plaintiff and construction company also served to release the railroad from liability. "If the master is bound through his agent, can he not be released through his agent? . . . This would seem to be obvious, except in those cases where the master actively participates in the wrong and thereby makes himself a joint tort feasor." *Id.* at 482-83, 66 S.E. at 437; *see also* Robert E. Lee, *North Carolina Law of Agency and Partnership* at 33 (6th ed. 1977).

Here, as in *Smith*, there is no evidence that defendant New South Pizza "actively participated in the alleged wrong." Therefore, the majority's superficial conclusion that New South Pizza remains liable lacks support in the law. Implicit in the majority's opinion is the view that the legislature in enacting N.C.G.S. § 1B-4 was unaware of the rule in *Smith*. In ascertaining legislative intent, "it is always presumed that the Legislature acted with full knowledge

of prior and existing law." *Investors, Inc. v. Berry,* 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977). Absent clear legislative intent to the contrary, we should presume that the legislature was aware of and intended to retain the longstanding common law rule enunciated in *Smith.*

Moreover, even if the majority were correct in its assertion that somehow N.C.G.S. § 1B-4 "changes the holding in *Smith,*" the outcome reached by the majority still is untenable. A fundamental dictate of statutory construction is that statutes in derogation of the common law must be strictly construed. *State v. Lester,* 294 N.C. 220, 240 S.E.2d 391 (1978); *Quick v. United Ben. Life Ins. Co.,* 287 N.C. 47, 213 S.E.2d 563 (1975); *Price v. Edwards,* 178 N.C. 493, 101 S.E. 33 (1919). Here, at common law the release from liability of the servant required the release of the master. *See Smith,* 151 N.C. 479, 66 S.E. 435. In the face of this understanding, and the interpretative requirement of strict construction, the majority nevertheless bases its holding on the most tenuous foundation: it "*believe[s]* the Act broadens the definition of 'tort-feasor' to encompass a vicariously liable master." (Emphasis added.) In so doing, it eviscerates a tenet held fast by our common law for nearly a century.

For the foregoing reasons, I respectfully dissent from the opinion of the majority.

Chief Justice EXUM and Justice WHICHARD join in this dissenting opinion.